IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WILSON, ET AL, | * | |
| | * | |
| Petitioners | * | CASE NO. 4:20-CV-00794 |
| | * | |
| v. | * | |
| | * | |
| WILLIAMS, ET AL, | * | JUDGE GWIN |
| | * | |
| Respondents | * | |

DECLARATION OF CORY CLARK

I, Cory Clark, do hereby declare, certify and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons (BOP). I currently work as a Senior Designator for the Designations and Sentence Computation Center (DSCC) in Grand Prairie, Texas. I have held this position since January 2006. I have been employed by BOP since January 1996.

**THE BOP'S DESIGNATION AUTHORITY UNDER 18 U.S.C. §3621(b)**

2. Attached to this declaration is a true and correct copy of BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification (the "Program Statement").

3. The BOP issued the Program Statement to provide guidance to staff on how to apply Title 18 United States Code (U.S.C.) § 3621(b), which states in pertinent part:

> **The Bureau of Prisons shall designate the place of the prisoner's imprisonment.** The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;

**GOVERNMENT EXHIBIT B**

1

>(4) any statement by the court that imposed the sentence –
>(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>(B) recommending a type of penal or correctional facility as appropriate; and
>(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*See* 18 U.S.C. § 3621(b) (Emphasis added).

## OVERVIEW OF THE BOP'S DESIGNATION PROCESS

4. The BOP created the DSCC to centralize all determinations regarding inmate sentence computations and institution placements.

5. Decisions regarding initial institution placements are referred to as designations.

6. Once a defendant is sentenced to a federal term of imprisonment, staff of the United States Probation Office (USPO) upload documents to an electronic system known as "eDesignate". For cases involving original sentencing to a term of imprisonment, these documents typically include the Judgement in a Criminal Case and the Presentence Investigation Report (PSR). For cases involving sentencing to a term of imprisonment based upon revocation of a term of supervised release, these documents typically include the order by which the court revoked supervised release and imposed a term of imprisonment, along with the revocation petition, which BOP staff also refer to as the violation report.

7. Once USPO staff have uploaded the relevant documents, the case is transferred on eDesignate to the United States Marshals Service (USMS). Typically, USMS staff then upload a copy of the defendant's USM-129, *Individual Custody/Detention Report*, to eDesignate and then use eDesignate to transfer the case to the BOP and to request that the DSCC either provide a release date for the defendant (in cases where the defendant received a short sentence and there is not sufficient time to transport him to a facility before his release date) or designate the defendant to a facility to serve the term of imprisonment.

8. Once a case has been transferred from the USMS to the BOP, staff of the DSCC team assigned to the defendant's sentencing district will open the case and begin the classification process. Once classified, the case is referred to the Hotel Team who is responsible for completing designations. When the process has been completed, DSCC staff respond to the USMS request through eDesignate, usually by notifying the USMS where the inmate will serve the term of imprisonment. The USMS then transports the inmate to the designated facility or, if the defendant has been allowed to voluntarily surrender, the USMS will notify the defendant of the facility at which he must appear on the scheduled date.

### FACTORS IN THE DESIGNATION PROCESS

9. When making designations about inmate designations, the BOP follows the guidance contained in the Program Statement which provides:

> This Program Statement provides policy and procedure regarding the Bureau of Prisons inmate classification system. The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.
> The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b). All classification, designation and redesignation decisions are made without favoritism given to an inmate's social or economic status.

*PS 5100.08 at page 1.*

10. Consistent with the Program Statement, DSCC designation staff consider the following primary factors when making a designation decision: (1) the level of security and supervision the inmate requires; (2) the level of security and staff supervision the institution is able to provide; and (3) the inmate's program needs. *PS 5100.08 at Chapter 1, page 1.*

11. DSCC designation staff also consider additional factors including, but not limited to:

- The inmate's release residence;

3

- The level of overcrowding at an institution;

- Any security, location or program recommendation made by the sentencing court;

- Any Central Inmate Monitoring issues (see Program Statement <u>Central Inmate Monitoring Program</u>);

- Any additional security measures to ensure the protection of victims/witnesses and the public in general; and,

- Any other factor(s) which may involve the inmate's confinement; the protection of society; and/or the safe and orderly management of a BOP facility.

*PS 5100.08 at Chapter 1, pages 1-2.*

12. The designation process involves two parts. First, DSCC staff on the team responsible for the inmate's sentencing district classify the inmate according to a security level (minimum, low, medium or high). Second, DSCC staff on Hotel Team designate the inmate to a particular facility commensurate with their security level and custody level and the factors identified below.

13. An inmate's security level represents the level of security the inmate requires. Security level is determined by several classification items, to include: an inmate's voluntary status, months to release, severity of current offense, criminal history score, history of violence and escape, detainer/pending charges, age, education level, and drug and alcohol abuse. In addition, the BOP has created Public Safety Factors and Management Variables which may adjust the inmate's security level up or down depending on the BOP's professional judgment. *PS 5100.08 at Chapter 5.*

14. An inmate's custody classification represents the amount of staff supervision the inmate requires. It is tied to an inmate's security level. *PS 5100.08 at Chapter 1, page 2 and Chapter 2, page 2*.

### THE REDESIGNATION PROCESS

15. Under some circumstances, the BOP may transfer an inmate to a different institution following initial designation. This is referred to as a redesignation. Reasons for requesting redesignation include, but are not limited to disciplinary or closer supervision reasons, institution classification reasons, institution adjustment reasons, medical/psychological reasons, programming or training reasons, or because an inmate is nearing release. *PS 5100.08 at Chapter 7, pages 1-12*.

16. If institution staff believe an inmate is no longer appropriate for his current institution based on any of the factors identified in Chapter 7 of the Program Statement, they submit a redesignation request to the DSCC. Ordinarily, the DSCC will decide whether to grant or deny the request. DSCC staff will consider redesignation requests using the same factors outlined in paragraphs 24-26. In deciding whether to grant or deny a redesignation request, DSCC staff also carefully review the inmate's institutional adjustment and program performance. *PS 5100.08 at Chapter 1, page 3 and Chapter 7*.

17. If the request is granted, the DSCC will designate the inmate to another facility. If the request is denied, the inmate will remain at the same facility.

### REQUIREMENTS OF THE PRELIMINARY INJUNCTION

18. I understand BOP has been ordered by the Court in *Wilson, et al. v. Williams, et al.*, No. 4:20-cv-00794 (N.D. Ohio Apr. 22, 2020), to create a list of inmates at FCI Elkton identified by the CDC as being at higher risk of complications from COVID-19. I further understand that

5

BOP has been ordered to evaluate each inmate that is identified for transfer out of FCI Elkton through any means, including but, not limited to, compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two weeks. I further understand that BOP has been ordered to transfer any identified inmate who is ineligible for compassionate release, home release, parole, or community supervision to another BOP facility. I further understand that BOP has compiled a list of 837 inmates who are over the age 65 and/or have diagnosed medical conditions that are identified by the CDC as making an individual at higher risk of complications from COVID-19. Finally, I understand that inmates transferred from FCI Elkton are to be sent to another BOP facility where measures, such as single-cell placement or social distancing, may be accomplished.

19. There are several reasons why compliance with the Judge's Order in this case is impossible.

20. The Judge has ordered that inmates transferred from FCI Elkton be sent to another BOP facility where measures, such as single-cell placement or social distancing, may be accomplished. However, inmates are not designated to particular cells. Rather, when a designation is made, DSCC considers the rated capacity and target populations of the prospective institution to determine whether there is enough space per inmate in the physical confines of the institution. The Warden of each institution determines how that space is to be used (single cell, double cell, etc.) depending on the number of inmates designated there and the available space. Thus, there is no way inmates could be transferred with any assurances that the inmate receive a single cell assignment at the new institution.

21. I believe BOP staff are doing their best during the pandemic to provide those social distancing measures that can be provided for the benefit of inmates and staff. However, there is

no way to determine which institutions are appropriate to transfer inmates based on where social distancing measures could be accomplished. The measures put in place depend on the physical layout of the respective institution. For example, the measures in place at a BOP camp would certainly differ from those taken at one of BOP's maximum security prisons. Thus, there can be no guarantee that a new facility can provide the measures desired by the Judge.

22. Additional factors besides space capacity and availability of social distancing must be considered by DSCC when re-designating inmates. These factors, including but not limited to programing needs such as the Residential Drug Abuse Program (RDAP), location recommendations from the inmate's sentencing judge, care levels, and separatee/gang issues, care must be considered. These factors further limit the number of available options for transfer.

23. Should BOP attempt to comply with the Judge's Order, it is expected that a substantive review of an inmate's situation and needs would take between 30-40 minutes per inmate on average. Of course, simpler cases would require less time. Complicated cases, such as inmates who require special supervision (of which approximately 50 are housed at FCI Elkton), may require more time and levels of review.

24. Finally, even if the DSCC could comply in this instance with the Judge's Order, it would be impossible to replicate this should any other Judges issue the same Order. In short order, BOP/DSCC would be unable to transfer inmates pursuant to one Court's mandate without violating another Court's similar order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed on this 28th day of April 2020.

CORY CLARK
Digitally signed by CORY CLARK
Date: 2020.04.28 12:18:23 -05'00'

_____
Cory Clark
Senior Designator
Designation and Sentence Computation Center