IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WILSON, ET AL, | * | |
| Petitioners | * | CASE NO. 4:20-CV-00794 |
| v. | * | |
| WILLIAMS, ET AL, | * | JUDGE GWIN |
| Respondents | * | |

DECLARATION OF PETER POTTIOS

I, Peter Pottios, do hereby declare, certify and state as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons (BOP). I currently work as the Prisoner Transportation Coordinator for the Designations and Sentence Computation Center (DSCC). I work in Kansas City, Missouri. I have held this position since July 2016. I have been employed by BOP since May 1991.

2. As the Prisoner Transportation Coordinator, I work as the BOP's liaison to the Justice Prisoner & Alien Transportation System (JPATS). JPATS, managed by the United States Marshals Service, is a system for transporting prisoners and criminal aliens between judicial districts, correctional institutions and foreign countries. JPATS supports the federal judiciary through its scheduling and transportation responsibilities. JPATS transports sentenced prisoners who are in the custody of the BOP to hearings, court appearances and detention facilities.

3. I understand BOP has been ordered by the Court in *Wilson, et al. v. Williams, et al.*, No. 4:20-cv-00794 (N.D. Ohio Apr. 22, 2020), to create a list of inmates at FCI Elkton identified by the CDC as being at higher risk of complications from COVID-19. I further understand that

1



GOVERNMENT EXHIBIT C

BOP has been ordered to evaluate each inmate that is identified for transfer out of FCI-Elkton through any means, including but, not limited to, compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two weeks. I further understand that BOP has been ordered to transfer any identified inmate who is ineligible for compassionate release, home release, parole, or community supervision to another BOP facility. I further understand that BOP has compiled a list of 837 inmates who are over the age 65 and/or have diagnosed medical conditions that are identified by the CDC as making an individual at higher risk of complications from COVID-19. Finally, I understand that inmates transferred from FCI Elkton are to be sent to another BOP facility where measures, such as single-cell placement or social distancing, may be accomplished.

4. Complying with the Judge's Order would be exceptionally difficult if not impossible for a variety of reasons.

5. In the past, there have been occasions when BOP has had to transfer large numbers of inmates at one time due to natural disasters, such as damage caused to facilities from tornados or hurricanes. The most recent example occurred at FCI Estill in Estill, South Carolina earlier this month. In that situation, BOP was forced to transfer about the same number of inmates (832) that are involved in the list in this case. However, those inmates were transferred together and all brought to the same location, USP Lewisburg, which was able to accommodate the security level needed for those inmates.

6. Should BOP be forced to comply with the Judge's Order, I do not believe there is a low security facility that would be able to house the FCI Elkton inmates as a group. Rather, smaller groups of inmates would be transferred together to a variety of BOP's low security institutions

around the nation. The list of low security facilities is further reduced when other factors, such as space capacity, programing needs, separatee requirements, and other issues are considered.

7. One of the Court's concerns is that medically vulnerable inmates maintain social distancing. The ability to maintain this during transportation is almost impossible. If inmates are transported by bus from one institution to another, up to 40 inmates are transported together making social distancing between inmates and BOP staff impossible. Flights, which normally can carry up to 126 inmates, are now capped at 81 in an effort to reduce contact during the pandemic. Still, inmates/staff are around each other in an enclosed environment. Thus, eliminating the chances of the spread of disease is impossible.

8. Another impact with complying with the Judge's Order is the monetary cost associated. JPATS charges BOP for the cost of transporting inmates. JPATS charges BOP $15,790 per flight hour to transport inmates on its planes. In Fiscal Year 2018, it cost an average of $863 per inmate to transport an inmate by air. It cost an average of $190 per inmate to transport an inmate by bus.

9. The mission to transfer the Estill inmates took BOP staff four days and cost in excess of $1,000,000. Transporting inmates to various institutions, as described above, would increase these costs tremendously.

10. The costs described above do not include the number of man-hours it would take to move the inmates, which obviously varies depending on the distance and mode of transportation. However, BOP can spend on average between $600-$2,000 in additional expenses and per diem costs for each group of 40 inmates transported by bus.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed on this 28th day of April 2020.

_____

Peter Pottios
Prisoner Transportation Coordinator
Designation and Sentence Computation Center

4