UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CRAIG WILSON, ERIC BELLAMY, KENDAL NELSON, and MAXIMINO NIEVES, on behalf of themselves and those similarly situated,<br><br>    *Petitioners*,<br><br>    v.<br><br>MARK WILLIAMS, warden of Elkton Federal Correctional Institutions; and MICHAEL CARVAJAL, Federal Bureau of Prisons Director, in their official capacities,<br><br>    *Respondents*. | Case No. 20-cv-0794<br>Judge James Gwin |

**MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION
FOR CLASS CERTIFICATION**

As of 4:00 p.m., the Bureau of Prisons reports that its testing has identified 45 prisoners and 48 staff who are COVID-19 positive at Elkton.[1] Seven prisoners have died—the highest number of fatalities at a prison in the BOP system.[2] This reality, along with the record evidence submitted to date, establish that "the deteriorating health conditions at Elkton pose a danger for each of the 2,400 men who are incarcerated" there and "an even greater risk for inmates whose medical conditions put them at higher risk of death if they contract the virus." PI Order, ECF No. 22 at 6. This unabated exposure to a highly infectious, potentially fatal disease presents an unacceptable risk to these prisoners' health that violates their constitutional rights.

Petitioners thus move to certify this case as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(2) and for appointment of the undersigned as class counsel under Rule 23(g).

---

[1] *See* Federal Bureau of Prisons, COVID-19, https://bit.ly/bopcovid (last visited Apr. 29, 2020).

[2] *See id.* (reporting seven deaths at one other facility, Oakdale I FCI).

**PROPOSED CLASS AND SUBCLASS DEFINITIONS**

<u>Class</u>: All current and future people in post-conviction custody at Elkton.

<u>Subclass</u>: The proposed subclass includes those prisoners who are particularly vulnerable to injury or death if they were to contract COVID-19. This subclass includes: (a) all current and future persons incarcerated at Elkton over the age of 50 and (b) all current and future persons incarcerated at Elkton of any age who experience: chronic lung disease or moderate to severe asthma; serious heart conditions; conditions that can cause a person to be immunocompromised (including cancer treatment, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, or prolonged use of corticosteroids and other immune weakening medications); severe obesity (defined as a body mass index of 40 or higher); diabetes; chronic kidney disease or undergoing dialysis; or liver disease.

**ARGUMENT**

A class action may be maintained if Rule 23(a)'s four requirements are met and the class is one listed in Rule 23(b). *See* Fed. R. Civ. P. 23(a)-(b). The proposed class and subclass meet Rule 23(a)'s requirements and seek relief as described in Rule 23(b)(2).

**I.    The Proposed Class Satisfies the Requirements of Rule 23(a).**

Rule 23(a) contains four requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Each requirement is met here.

*Numerosity*. The proposed Class and Subclass are sufficiently numerous to make joinder "impracticable." Fed. R. Civ. P. 23(a)(1). There are approximately 2,407 persons within the proposed Class. *See* Federal Bureau of Prisons, FCI Elkton, *available at* https://bit.ly/bopelkton (last visited Apr. 29, 2020). There are "hundreds" of prisoners within the proposed Subclass. *See* PI Order, ECF No. 22 at 13 n.51 (reaching this conclusion after review of a list of "Elkton inmates

2

with certain medical conditions").³ Respondents have already identified at least 837 members using a keyword search. *See* Stay Mot., ECF No. 30-1 at 3. More may well be uncovered through additional investigation. These kinds of "substantial numbers" meet the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (internal quotation marks omitted).

*Commonality*. "[T]here are questions of law or fact common to the" proposed Class and Subclass. Fed. R. Civ. P. 23(a)(2). The commonality requirement is met if the class's claims "depend on a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). That is the case here, where the claim is that continued incarceration at Elkton exposes the Class and Subclass members to a risk of contracting COVID-19 that violates their Eighth Amendment rights.

"[T]here need be only one common question to certify a class," and here there are many. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). Common questions of fact include questions related to the risk of COVID-19 at Elkton, such as the current incidence of COVID-19 among persons incarcerated or working at Elkton and whether those incarcerated at Elkton are housed in accordance with CDC guidance. *See, e.g.*, PI Order, ECF No. 22 at 16 (noting that "Elkton has altogether failed to separate its inmates at least six feet apart"). There are also common questions of fact related to the BOP's actions—or failure to act— in response to those risks, such as the rate of testing at Elkton and measures implemented to avoid the spread of COVID-19. *See, e.g.*, *id.* ("One only need look at Elkton's testing debacle for one example of this deliberate indifference."). Common questions of law, meanwhile, include whether

---

³ Because this Court's preliminary injunction opinion addressed a narrower group of persons than the proposed subclass—restricting the age-based subclass definition to those persons over 65—the proposed subclass here is necessarily in the hundreds. *See* PI Order, ECF 22 at 12.

the Respondents' actions at Elkton amount to deliberate indifference that creates a risk of serious illness, needless suffering, and death to those incarcerated there in violation of the Eighth Amendment.  These questions will "generate common answers" that are "apt to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at 350 (internal quotation marks omitted).

Respondents disagree, but their arguments lack merit.  They primarily argue that if the Court determines that continued confinement at Elkton violates the Class and Subclass members' constitutional rights, then *they*—that is, the BOP—will have to make individualized determinations when assessing how to transfer those members out of Elkton.  *See* PI Opp., ECF No. 10 at 36–37.  That argument says nothing about whether class litigation will allow *the Court* to answer questions common to all claims.  Respondents also suggest that the two-pronged test for deliberate indifference "may" differ among subclass members.  Stay Mot., ECF No. 30-1 at 14.  They do not explain how, and there is no indication that it should.  The proposed Subclass definition borrows from the categories that the Government itself uses to identify those at highest risk for COVID-19.  *See* Centers for Disease Control and Prevention, People Who Are at Higher Risk for Severe Illness, *available at https://bit.ly/cdcrisks* (last visited Apr. 28, 2020).[4]  During an ongoing pandemic, the Government cannot expect litigants to offer more fine-grained risk calculations based on medical conditions than it does.  And Respondents have not shown that they have treated some Subclass members more indifferently than others based on such calculations.

---

[4] As this Court recognized, the CDC identifies people 65 or older as high risk.  *See* PI Order, ECF No. 22 at 12 n. 49 (invoking cours' "broad authority to modify class definitions").  However, the Government's latest available data supports the proposed Subclass cutoff of age 50.  *See, e.g.*, Centers for Disease Control and Prevention, Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) — United States, February 12–March 16, 2020, tbl. 2, *available at* https://bit.ly/cdc316data (last visited Apr. 29, 2020) (listing the hospitalization rates as 21.2–28.3% for ages 45 to 54, 20.5–30.1% for ages 55–64, and 28.6–43.5% for ages 65–74; ICU admission rates as 5.4–10.4% for ages 45 to 54, 4.7–11.2% for ages 55–64, and 8.1–18.8% for ages 65–74; and fatality rates as 0.5–0.8% for ages 45 to 54, 1.4–2.6% for ages 55–64, and 2.7–4.9% for ages 65–74).

*Typicality*. The named Petitioners' claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Each Petitioner is housed at Elkton. Petitioners Bellamy, Nelson, and Wilson can also represent the Subclass because each is over the age of 50 and/or has one of the conditions listed in the definition of the Subclass above. Because the harm that each of them faces stems directly from Respondents' conduct toward the class as a whole, this Court "may properly attribute a collective nature to the challenged conduct." *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

*Adequacy*. The Named Petitioners "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Petitioners have no interests adverse to the interests of the proposed Class and Subclass. Petitioners retained pro bono counsel with experience and success in the prosecution of civil rights litigation. Counsel know of no conflicts among proposed class members or between counsel and proposed class members.

## II. The Proposed Class Satisfies the Requirements of Rule 23(b)(2).

Rule 23(b)(2) permits class adjudication where, as here, Respondents "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities." *Braggs v. Dunn*, 317 F.R.D. 634, 667 (M.D. Ala. 2016) (citation omitted). That is because "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (citation omitted).

Here, Respondents' actions—and inaction—came in response to the risks of COVID-19 at Elkton, a ground that applies to all Class and Subclass members. Respondents' deliberate indifference to the health and safety of all members of the Class and Subclass can be remedied only by declaring Respondents' conduct in violation of Petitioners' constitutional rights and granting injunctive relief to alleviate those risks. Rule 23(b)(2) is thus satisfied. *See, e.g.*, *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("[T]he focus in a (b)(2) class is more heavily placed on the nature of the remedy sought.").[5]

### III. Appointment of Class Counsel Is Appropriate.

The Court should appoint undersigned counsel class counsel here. Fed. R. Civ. P. 23(g)(1); *see also* PI Order, ECF No. 22 at 14 ("[C]ounsel is competent to represent the class."). Counsel investigated the conditions at FCI-Elkton and the potential claims that could afford prisoners relief. *See* Fed. R. Civ. P. 23(g)(1)(A)(i); Carey Decl. ¶ 7. Counsel have experience handling complex cases on prisoners' behalf, including experience in litigating inadequate medical treatment in federal prisons in Ohio. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii); Carey Decl. ¶¶ 2–6. This has given counsel extensive "knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). And counsel has the resources and financial capacity to litigate this action. *See* Fed. R. Civ. Proc. 23(g)(1)(A)(iv); Carey Decl. ¶ 8. Counsel will thus "fairly and adequately represent the interests" of the Class and Subclass. Fed. R. Civ. P. 23(g)(4).

---

[5] In the alternative, the requirements of Rule 23(b)(1) are satisfied, because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of contact for the party opposing the proposed classes.

## CONCLUSION

For these reasons, Petitioners ask this Court to certify the described Class and Subclass.

Respectfully submitted,

/s/ David J. Carey
David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: (614) 586-1972
Fax: (614) 586-1974
dcarey@acluohio.org

Joseph Mead (0091903)
Freda J. Levenson (0045916)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44102
Phone: (614) 586-1972
Fax: (614) 586-1974
attyjmead@gmail.com
flevenson@acluohio.org

David A. Singleton (0074556)
Mark A. Vander Laan (0013297)
Michael L. Zuckerman (0097194)
Ohio Justice & Policy Center
915 East Ninth Street, Suite 601
Cincinnati, OH 45202
Phone: (513) 421-1108
dsingleton@ohiojpc.org
mvanderlaan@ohiojpc.org
mzuckerman@ohiojpc.org

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2020, the foregoing was filed with the Court's CM/ECF system. Notice of this filing will be sent by operation of that system to all counsel of record.

<u>/s/ David J. Carey</u>
David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: (614) 586-1972
Fax: (614) 586-1974
dcarey@acluohio.org

*Counsel for Petitioners*