UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG WILSON, et al., | ) | CASE NO.: 4:20cv794 |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | JUDGE JAMES S. GWIN |
| | ) | |
| MARK WILLIAMS, Warden of Elkton | ) | |
| Federal Correctional Institution, et al., | ) | |
| | ) | |
| Respondents. | ) | |

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## INTRODUCTION

In their Motion for Class Certification (ECF No. 33, the "Class Motion"), Petitioners-Plaintiffs ("Petitioners") seek to certify a class encompassing all current or future inmates at FCI Elkton, as well as a subclass, which, informed by the Court's preliminary injunction ruling, Petitioners define to include "all Elkton inmates 65 years or older and those with documented, pre-existing medical conditions, including heart, lung, kidney, and liver conditions, diabetes, conditions causing a person to be immunocompromised (including, but not limited to cancer treatment, transplants, HIV or AIDS, or the use of immune weakening medications), and severe obesity (body mass index of 40 or higher)." This Court should deny Petitioners' Class Motion for failure to meet the requirements of Federal Rules of Civil Procedure 23(a) and (b).

Petitioners' request for a one-size-fits-all order declaring that the Bureau of Prisons is deliberately indifferent to providing reasonable medical care and safety to the proposed class is fundamentally incompatible with classwide adjudication. Each of the Named Petitioners and the proposed class members – numbering more than 2,400 in the class and more than 800 in the subclass – presents significantly different medical risk factors, criminal histories, and social circumstances requiring individualized analysis, and disqualifying their claims from class treatment. Named Petitioners fail to present any evidence or analysis about the class members, precluding the rigorous analysis that Rule 23 requires must accompany a class certification ruling. Petitioners also seek varying forms of relief, which they concede (and the Court has acknowledged) will differ between class members based upon a case-by-case assessment of each class member's suitability for particular remedies, as measured by a host of criteria.

The Named Petitioners' claims also are not representative of the proposed class given the variety of facts presented by each inmate's individual cirucmstances, such as their differing

criminal backgrounds, myriad underlying medical conditions of varying severity, if any, and home environments available to an inmate if released.

## BACKGROUND

I. Factual Background

    A. The Named Petitioners

Petitioner Craig Wilson is 42 years old. According to the Petition, he suffers from chronic asthma, and has since childhood. He uses a rescue inhaler and takes medication for breathing problems. (ECF No. 1 at 4). The Petition does not describe Wilson's criminal history, but characterizes his conviction offense as a "nonviolent offense." (*Id.*) His scheduled release date is January 5, 2026. Wilson has not sought relief through the administrative process, though he contends he attempted to do so but could not due to a lack of available forms. (*Id.*) Wilson is not among the inmates identified by BOP pursuant to the Court's orders. (ECF No. 35-1).

Petitioner Eric Bellamy is 52 years old. The Petition alleges that he has a history of heart problems, including one enlarged heart valve and two valves that are regurgitating. (ECF No. 1 at 4). He was convicted of possession of narcotics and a firearm, for which he is serving a 75-month sentence. (*Id.*) The Petition states he has "no history of violence." (*Id.*) He has served 16 months of his sentence and is scheduled for release on January 10, 2024. Bellamy is not among the inmates identified by BOP pursuant to the Court's orders. (ECF No. 35-1).

Petitioner Kendal Nelson is 46 years old. The Petition states that he suffers from asthma and uses a CPAP machine, has had a prior heart attack, has active coronary artery disease and a stented artery, and suffers from stage 4 kidney disease. (ECF No. 1 at 5). He was convicted of "a drug offense and possession of a firearm" and sentenced to serve 9 years. (*Id.*) So far, he has served 3 years, and is scheduled for release on February 4, 2025. He is the only Named Petitioner

who is identified by BOP pursuant to the Court's orders. (ECF No. 35-1 at 11).

Petitioner Maximino Nieves is 46 years old. Unlike the other Petitioners, Nieves alleges no health problems of any kind. (ECF No. 1 at 5). He was convicted of conspiracy to distribute narcotics and is scheduled for release in less than a year, on February 4, 2021. Nieves is not among the inmates identified by BOP pursuant to the Court's orders. (ECF No. 35-1).

B.  The Unnamed Class Members

Petitioners provide little information about potential class members beyond their incarceration at Elkton. Unnamed class members may range in age from young adults to the very elderly; may have health issues that span the spectrum from terminal to non-existent; and may be presently infected with COVID-19 and receiving treatment, healthy and unexposed, or previously-infected and now recovered with potential immunity. Petitioners do not explain the ways in which those characteristics might affect the merits of their claims or the type of relief for which they are eligible.

The offenses for which proposed class members are presently incarcerated and their overall criminal histories are likewise disparate. Some pose high risk of recidivism and would present a threat to their community, while others are unlikely to reoffend and pose little threat if released. Some inmates have homes and families that could provide support for home confinement, while others would likely become homeless and alone, without any means of supporting themselves. Some could access high quality medical treatment if they became ill, while others depend entirely on BOP and would have no meaningful access to health care if released.

In sum, measured by these and other potentially relevant data points, every one of the more than 2,400 proposed class members is a unique individual with different characteristics.

3

II.  Procedural History

Petitioners commenced this action on April 13, 2020 (ECF No. 1) (the "Petition"). Invoking 28 U.S.C. § 2241, Petitioners claim that their continued detention violates their Eighth Amendment right to be free from cruel and unusual punishment on the grounds that Respondents have acted with deliberate indifference to their medical needs. Petitioners filed the Petition as a class action in which the Named Petitioners sought to represent a class consisting of all current and future inmates at Elkton, as well as a subclass of "medically vulnerable" inmates.

Respondents answered the Petition on April 17, 2020, opposing the relief sought by Petitioners. (ECF No. 10). On April 22, 2020, the Court issued an Order granting in part and denying part Petitioners' request for preliminary injunctive relief. (ECF No. 22). In the Order, the Court found that the broader class Petitioners seek to represent, comprising all present and future Elkton inmates, raised a challenge to the conditions of their confinement, which was not cognizable under § 2241. (ECF No. 22 at 11) ("For the remainder of the less-obviously-vulnerable class the challenges sound more as a confinement conditions claim."). The Court also found that the proposed subclass of medically vulnerable inmates – which the Court narrowed to include only those inmates considered "high risk" under CDC guidelines – were challenging the manner in which they served their sentences, which could be maintained as a habeas proceeding under § 2241. (*Id.*) The Court went on to find that this subclass provisionally satisfied the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) for treatment as an injunctive class, and entered a preliminary injunction, ordering Respondents to immediately identify all potential members of the redefined subclass. (*Id.* at 13, 22).

Acknowledging that each potential class member presents a different candidacy for the varying types of relief requested, the Court found it was "unable to determine the specific type of enlargement most suitable for each subclass member." (*Id.* at 9). Indeed, the Court explained that

4

"the Petitioners seek varied relief that allows the BOP to make individualized determination as to where each subclass member should be placed." (*Id.* at 14). Thus, the Court ordered Respondents to conduct these "individualized determination[s]" and "evaluate each subclass member's eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two (2) weeks." (*Id.* at 20). Further recognizing the factual variations in each potential class member, the Court ordered Respondents to "prioritize the review by the medical threat level. For example, older inmates with heart, pulmonary, diabetes or immunity risks should receive review priority over subclass members who are younger." (*Id.*)

Respondents appealed the preliminary injunction Order to the Sixth Circuit and filed a motion in this Court seeking a stay pending appeal. (*See* ECF Nos. 26 & 29).

## SUMMARY OF ARGUMENT

To certify a class under Federal Rule of Civil Procedure 23, a plaintiff must show that the proposed class satisfies all four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Here, Petitioners fail to meet three of the four. Commonality and typicality are lacking because Petitioners' proposed class would combine inmates with different conviction offenses, sentences, outdates, disciplinary histories, ages, medical histories, proximities to infected inmates, availabilities of a home landing spot, likelihoods of transmitting the virus to someone in home detention, likelihoods of violation or recidivism, and present different dangers to the community. Moreover, class members likely have different means of providing for themselves and different access to medical care upon release. Petitioners lump inmates who are currently sick with COVID-19 together with asymptomatic inmates, as well as inmates who were previously sick and made a full recovery. They also include future inmates whose identities are as of yet unknown and who may never be exposed to or contract COVID-19.

5

There simply is no commonality and typicality among proposed class members other than current or future incarceration at Elkton. Likewise, Petitioners cannot show adequacy of representation because they demand a drastic remedy that would have profound effects on members of the class without considering the personal impact on the individual class members. It is likely that the sudden removal of so many inmates would leave some of them homeless and without access to food, shelter, or medical care in the midst of a grave pandemic that is substantially impacting the nation. Petitioners' failure to account for such concerns in the relief that they seek demonstrates their unfitness as class representatives.

## ARGUMENT

I. <u>Class Certification Is Inappropriate in Habeas Proceedings</u>

The Supreme Court "has never addressed whether habeas relief can be pursued in a class action." *Jennings v. Rodriguez*, 138 S. Ct. 830, 858 n.7 (2018) (Thomas, J., concurring) (citing *Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984)) (reserving the question). At least as a technical matter, "Rule 23 does not apply to habeas corpus proceedings." *Mays v. Dart*, No. 20 C 2134, 2020 WL 1987007, at *16 (N.D. Ill. Apr. 27, 2020) (citing *Bijeol v. Benson*, 513 F.2d 965, 967-68 (7th Cir. 1975). Even courts that allow class actions pursuing habeas relief generally agree that such proceedings are "ordinarily disfavored." *See Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987). The Sixth Circuit appears not to have decided the question. For the reasons explained in connection with the Rule 23 analysis below, class action procedures are incompatible with the type of relief for which habeas proceedings are designed. Indeed, the inmate-specific determinations required in this case illustrate why class litigation should not be permitted.

II. <u>Class Certification Standard</u>

"The class action is 'an exception to the usual rule that litigation is conducted by and on

6

behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To certify a class under Federal Rule of Civil Procedure 23, a plaintiff must show that the proposed class satisfies all four requirements of Rule 23(a) and one of the three requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Petitioners seek certification under Rule 23(b)(2). Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that generally apply to the class." Fed. R. Civ. P. 23(b)(2). Petitioners bear the burden of proving that each requirement of Rule 23 is satisfied. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

"Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350; rather, the plaintiff is required "to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* "Class certification is appropriate if the court finds, after conducting a 'rigorous analysis' that the requirements of Rule 23 have been met." *Whirlpool*, 722 F.3d at 850 (quoting *Dukes*, 564 U.S. at 350). "Evidentiary proof is required to show compliance with Rule 23." *Food Lion, LLC v. Dean Foods Co.*, 312 F.R.D. 472, 482 (E.D. Tenn. 2016). Ordinarily, "the class determination should be predicated on evidence presented by the parties concerning the maintainability of the class action," and it necessarily may entail "some overlap" with the merits of the plaintiff's underlying claim. *Whirlpool*, 722 F.3d at 851.

III.     Petitioners' Motion to Certify Should Be Denied

    A.     <u>The Proposed Class of All Current and Future Inmates Cannot Be Certified</u>

In the Class Motion, Petitioners continue to press for certification not only of the subclass defined by the Court's prior ruling, but also the broader class that includes all present and future

Elkton inmates. The Court's Order, however, foreclosed certification of any such class.

Distinguishing members of the Court's re-drawn subclass, which the Court construed as raising a "challenge to the manner in which the sentence is served" that was "cognizable under 28 U.S.C. § 2241," the Court found that "the remainder of the less-obviously-vulnerable class" – i.e., everyone in the proposed class who was not part of the subclass – was raising a challenge that "sound[ed] more as a confinement conditions claim." (ECF No. 22 at 11).[1] The Court found that the "alteration to the confinement conditions" claims asserted by the "not medically vulnerable Elkton inmates" were "more like § 1983 claims" unsuitable for habeas relief. (*Id.*). And since Petitioners brought only a habeas claim, the Court found that it could "only properly address those claims suitable for habeas relief"—which those of the all-inclusive class were not. (*Id.*). Though the Court did not dismiss those claims outright, it found they could not proceed and denied relief to any inmates outside the proposed subclass. Thus, certification of the larger class would be futile because, as the Court has already found, such claims are not cognizable in habeas. *See J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 390 (6th Cir. 2008) ("If it is found, prior to class certification, that the named plaintiffs' individual claims are without merit, then dismissal is proper.")

B.  Petitioners Cannot Establish Commonality Within the Subclass

The nature of both the merits and petitioners' demand for relief serve to defeat class certification. To obtain class certification, Petitioners must demonstrate that the proposed class is entitled to common relief as to each count on which certification is sought. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). The Supreme Court has repeatedly held that "what matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a

---

[1]  Respondents reiterate their objection that even the subclass's claims are not cognizable in habeas. *See* Stay Mot. at 6-7, Dkt. 29; *see also Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted). The commonality requirement applies with special force to a class seeking certification under Rule 23(b)(2). As the Supreme Court recently noted, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Jennings*, 138 S. Ct. at 852 (quoting *Dukes*, 564 U.S. at 360).

For certification under Rule 23(b)(2), Petitioners must show that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. Accordingly, Petitioners bear the burden to demonstrate that any factual differences among the proposed class members are unlikely to affect their entitlement to relief. *See id.* Class certification under Rule 23(a) and (b)(2), therefore, requires two steps: (1) the identification of a common legal problem, and (2) a showing that the common legal issue may be resolved as to all class members simply by virtue of their membership in the class. *Dukes*, 564 U.S. at 350 (concluding that the common legal problem "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Petitioners' proposed subclass fails to meet the commonality requirement. They allege an Eighth Amendment violation, which requires proof that (1) Petitioners have suffered a deprivation that is, "objectively, sufficiently serious," "result[ing] in the denial of the minimal civilized measure of life's necessities," and (2) that BOP is acting with "deliberate indifference to inmate health or safety," "know[ing] of and disregard[ing] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). To meet the first part of the test,

9

Petitioners must establish the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

By definition – and as the Court's prior Order recognizes – each putative class member has different medical needs, some more serious than others. (ECF No. 22 at 11). Even when limited to the subclass defined by the Court, each individual presents a different risk profile for COVID-19 based on age, preexisting conditions, and a host of other factors. The proposed class members' differing risk profiles preclude a single, indivisible remedy, because not all risk profiles necessitate the same precautions. Indeed, the four Named Petitioners alone have differing medical conditions and thus differing risk profiles for COVID-19. In fact, only one of them, Petitioner Nelson, was identified by BOP pursuant to the Court's orders regarding the subclass. (ECF No. 35-1 at 11). But although he may meet the subclass definition, Petitioner Nelson's medical condition nevertheless differs materially from those of the other 836 potential subclass members. Some are likely at greater risk to contract the virus with serious complications, others less. The undeniable point is that all have different Eighth Amendment claims, which will make it impossible to resolve the merits "as to all class members simply by virtue of their membership in the class," as required for certification. *Dukes*, 564 U.S. at 350. To adjudicate Petitioners' claims, the Court will have to conduct an individualized evaluation of each class member's condition and needs, as well as prison officials' cognizance of and response thereto – in effect requiring 837 separate mini-trials. Such "[d]issimilarities within the proposed class" defeat commonality. *Id*.

Even after separately analyzing each class member's Eighth Amendment claim on the merits, moreover, the individualized inquiries will not end. Assuming some Petitioners could prove a constitutional violation, the relief to which they might be entitled would require separate

evaluation for each class member, accounting for such factors as age, conviction offense, criminal history, and recidivism risk, to name a few. The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted). Here, Petitioners admittedly do not seek a single, indivisible remedy. Instead, they seek varying forms of relief that could result in compassionate release, parole, community supervision, transfer furlough (to another facility, hospital, or halfway house), or non-transfer furlough – all dependent upon a constellation of individualized factors. (*See* ECF No. 1 at 2 n.2; ECF No. 22 at 7, 20). Thus, Petitioners' requested relief further defeats the commonality requirement and renders class certification inappropriate. *See Money v. Pritzker*, --- F. Supp. 3d ---, 2020 WL 1820660, at *14 (N.D. Ill. Apr. 10, 2020) (refusing to certify class of inmates seeking furlough based upon COVID-19 threat due to lack of commonality).

      C.    <u>Petitioners Cannot Establish Typicality Within the Subclass</u>

Petitioners' proposed class also fails to meet the typicality requirement. Commonality and typicality are interrelated and, in some instances, merge. *Dukes*, 564 U.S. at 350. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* Just as the Named Petitioners' circumstances and those of other Elkton inmates are too varied to satisfy the commonality requirement, Petitioners are also unable to satisfy Rule 23(a)(3). *See id.* (where "individualized assessments are necessary" the class fails on typicality under Rule 23(a)(3)).

11

Typicality "refers to the individual characteristics of the named plaintiff in relation to the class." *Food Lion*, 312 F.R.D. at 483. "Typicality is met if the class members' claims are fairly encompassed by the named plaintiffs' claims." *Whirlpool*, 722 F.3d at 852. This requirement "insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members. *Id.* at 852-53. Where the plaintiffs' claims depend on each individual's unique interactions with the defendant, typicality is lacking. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc).

The different forms of relief requested demonstrate Petitioners' inability to establish typicality. Petitioners ask the Court to order Respondents to release some inmates, place others on home confinement, send others to halfway houses, and transfer others to different facilities – though Petitioners cannot say what remedy they want for any particular class member. (ECF No. 1 at 37). This proposed remedial scheme exposes that the individual decision as to each putative class member will differ based on each inmate's unique factors. In short, Petitioners seek a classwide remedy on an individualized basis—a contradiction in terms that in and of itself defeats typicality.

In addition, Petitioners' claims are subject to unique defenses based on the facts and circumstances of each individual class member. *See Sacal-Micha v. Longoria*, --- F. Supp. 3d ---, 2020 WL 1518861, at *5 (S.D. Tex. Mar. 27, 2020) (noting that decisions from other district courts demonstrate individualized nature of analysis to determine whether release is appropriate). Petitioners effectively request classwide relief through *de facto* individual habeas petitions decided on the facts of each inmate. This relief is wholly inconsistent with the requirement that relief be common across the class. *Dukes*, 564 U.S. at 360. Other federal inmates throughout the

country have filed individual actions seeking release based upon COVID-19. That numerous federal inmates are having their cases for release heard on an individualized basis, with some inmates obtaining release (although Respondents argue that such remedy is not appropriate in a conditions of confinement case) and others not, further demonstrates that the impropriety of classwide relief.

D. <u>Petitioners Are Inadequate Class Representatives</u>

The Named Petitioners are not adequate class representatives because, as discussed above, their interests may conflict with those of other putative class members. The adequacy requirement is designed to protect class members who are not named as parties to the action but nevertheless who will be bound by a subsequent judgment. *Hansberry v. Lee*, 311 U.S. 32, 45 (1940); *see also Smith v. Babcock*, 19 F.3d 257, 265 n. 13 (6th Cir.1994) (holding that "[n]o class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard"). Assessing the adequacy of class representation involves two inquiries: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013).

As discussed above, the fact that the Named Petitioners have different medical needs, criminal histories, and recidivism risk ratings (among other things) underscores why they are inadequate class representatives with conflicting interests. Indeed, only Petitioner Nelson appears to qualify as a potential member of the subclass. The other three Named Petitioners are not members of the subclass and their claims are not cognizable in habeas; therefore they cannot possibly serve as class representatives. *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir.

1989) ("[T]he class representative must be a member of the class he claims to represent."). Nor is Petitioner Nelson an adequate representative. Whether an inmate is eligible for release depends in part upon whether he presents a danger to the community or a flight risk. Surely inmates eligible for release have different interests than other class members who are not. Given that release is not possible for all inmates, and that some inmates for whom release is possible are less likely to be released than others (because of relative flight risk or danger to the community), the interests of Named Petitioners – none of whom appear to be eligible for release – are adverse to those putative class members who may be. With his history of violence involving unlawful discharge of a firearm and Medium recidivism rating, Petitioner Nelson's claim for release is different (and weaker) than those of potential class members without any violence in their past and with minimal recidivism risk ratings. Furthermore, not all inmates may desire release or transfer for various reasons; for example, some inmates may not want to pursue release if they do not have a safe place to live. The Named Petitioners cannot adequately represent these widely divergent interests they do not share with potential class members.

      D.      <u>Petitioners Cannot Satisfy Rule 23(b)(2)</u>

"No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b)." *Sprague*, 133 F.3d at 397. Accordingly, "the unstated implication of Rule 23(b) is that there are cases that satisfy the Rule 23(a) criteria—numerous individuals with common questions whose rights are being pursued by an adequate class representative with typical claims—but that are unworthy of class certification on those grounds alone." 2 Newberg on Class Actions § 4:1 (5th ed.). Even if Petitioners could satisfy the commonality, typicality, and adequacy requirements of Rule 23(a) they fail to demonstrate that the putative class here fits Rule 23(b)(2).

Rule 23(b)(2) is referred to as a "mandatory" class action because class members do not have an automatic right to notice or a right to opt out of the class. The defining characteristic of a mandatory class is "the homogeneity of the interests of the members of the class." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009) (quoting *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 649 (6th Cir. 2006)). "Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000).

Here, potential class members have divergent interests requiring adjudication of individualized facts and seeking varied remedies, rendering such a "mandatory" class inappropriate. The individual nature of the injunctive relief sought is underscored by the various and specific inquiries required by the Court's Order on preliminary relief, which recognizes that the putative subclass members have different criminal histories, may or may not be eligible for various programs, have different medical conditions which differ in severity, differ in age, as well as recidivism risk classification and the various other factors considered for eligibility and/or transfer under BOP's mandate. (*See* ECF No. 22 at 9, 14, 20). Where, as here, "individual class member[s] would be entitled to a different injunction or declaratory judgment" from each other, Rule 23(b)(2) "does not authorize class certification." *Id*.

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioners' Motion for Class Certification.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ David M. DeVito
James R. Bennett II (OH #0071663)
Sara DeCaro (OH #0072485)
David M. DeVito (CA #243695)
Assistant United States Attorneys
United States Court House
801 West Superior Ave., Suite 400
Cleveland, Ohio 44113
216-622-3988 - Bennett
216-522-4982 - Fax
James.Bennett4@usdoj.gov
Sara.DeCaro@usdoj.gov
David.DeVito@usdoj.gov

*Attorneys for Respondents*

CERTIFICATE OF COMPLIANCE

Pursuant to Loc. R. 7.1(f), undersigned counsel certifies that the foregoing memorandum is 15 pages and within the limits of an unassigned matter.

/s/ David M. DeVito
David M. DeVito (CA #243695)
Assistant United States Attorney