# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG WILSON, et al., | ) | CASE NO.: 4:20cv794 |
| | ) | |
| Petitioners, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| MARK WILLIAMS, Warden of Elkton Federal Correctional Institution, et al., | ) | **RESPONDENTS' STATUS REPORT** |
| | ) | |
| Respondents. | ) | |

Pursuant to the Court's May 5, 2020 Order, ECF No. 45, Respondents respectfully submit the following status report, informing the Court of BOP's compliance with the Court's April 22, 2020 preliminary injunction that requires Respondents to identify within one day all members of a preliminary "subclass" that the Court defined to include Elkton inmates who are considered to be at high risk according to guidelines of the Centers for Disease Control and Prevention (CDC) and to evaluate each subclass member's eligibility for transfer out of Elkton through any means, including, but not limited to, compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two weeks.

As ordered by the Court, BOP compiled and publically filed a list of 837 Elkton inmates who are over the age of 65 and/or have diagnosed medical conditions that are identified by the CDC as making an individual at higher risk of complications from COVID-19.  (ECF No. 35-1)

Even before the Court issued its preliminary injunction, the BOP was evaluating, and continues to evaluate, all of the approximately 170,000 federal inmates' eligibility for transfer to home confinement, consistent with the directives from Congress and the Attorney General and is also working to consider requests for "compassionate release" pursuant to statutory and regulatory requirements. The BOP has undertaken this review at Elkton and, in the interest of expediting the review, has provided additional staff from other BOP institutions and offices to assist Elkton's Case Management Coordinator's Office with the evaluation of the inmates on the list of "medically vulnerable" inmates as defined by the Court for release through the methods identified by the Court. The BOP's compliance with this Court's order is described more fully below.

    I.    Home Confinement

The BOP has the authority to transfer an inmate to home confinement for the remainder of his sentence pursuant to the provisions and limitations set forth in 18 U.S.C. § 3624(c)(2) and 34 U.S.C. §60541. See also, BOP Program Statement 7320.01, *Home Confinement and BOP Operations Memorandum*, *Home Confinement under the First Step Act,* the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub.L. 116-136, Attorney General Memoranda dated March 26, 2020 and April 3, 2020, and BOP Memorandum dated April 15, 2020. As noted above, even before the Court issued its preliminary injunction, the BOP was evaluating the eligibility for home confinement of all inmates throughout the United States. The BOP has continued that evaluation, including at Elkton, and as of May 5, 2020, BOP has evaluated the eligibility for home confinement of all of the inmates from the list of "medically vulnerable" inmates as defined by the Court. As of May 5, 2020, five inmates are pending community placement. Another 72 inmates are being further evaluated for eligibility for home

confinement. The remaining inmates identified on the list are not appropriate for home confinement at this time.

II. Compassionate Release

The BOP does not have the authority to grant "compassionate release," but upon an inmate's request, the Director of BOP may make a motion to an inmate's sentencing court to reduce a term of imprisonment under 18 U.S.C. § 4205(g) and 18 U.S.C. § 3582(c)(l)(A). This process is outlined in BOP Program Statement 5050.50, *Compassionate Release/Reduction In Sentence Procedures for Implementation* of 18 U.S.C. §§ 3582 and 4205(g). The First Step Act, codified at 18 U.S.C. § 3582, and the applicable regulations, 28 C.F.R § 571.61, specify that an inmate may file a Motion for Reduction of Sentence directly with the sentencing court after exhaustion of administrative remedies, or 30 days from the date the Warden receives such a request from the inmate, whichever is earlier. The sentencing court makes the ultimate decision whether to grant compassionate release. As of May 5, 2020, 243 inmates on the list of "medically vulnerable" inmates as defined by the Court have submitted a request for compassionate release to the Warden. The BOP has evaluated those requests. Only one inmate of that group met the criteria for compassionate release. The BOP is currently working on a release plan for that inmate. The remaining inmates who submitted requests did not meet the criteria for compassionate release.

The large majority of the remaining inmates on the list have not submitted requests for compassionate release; consequently, BOP lacks information required by regulation to complete the assessment. However, BOP has identified six inmates on the list who, although they have not formally requested compassionate release, BOP is currently considering pending further review.

Among other things, inmates are required to submit a release plan with their request. *See* 28 C.F.R. § 571.61. A release plan is a critical part of BOP's evaluation of a compassionate release request; release plans are highly individualized and developed by the inmate with assistance from BOP social workers and include information regarding where the inmate will reside, how the inmate will support himself, and where the inmate will receive medical treatment and how he will pay for such treatment. Without this information submitted to the Warden along with the inmate's request, the BOP is unable to assess the inmate for eligibility for compassionate release. And absent a request, BOP also cannot know whether a particular inmate even desires to seek compassionate release. If additional Elkton inmates, including inmates on the list of "medically vulnerable" inmates as defined by the Court, submit requests for compassionate release, BOP will review and act on their requests as quickly as feasible.

  III.  Inmate Furloughs and Supervised Release

The BOP has the authority to temporarily release from custody (i.e. "furlough") an inmate pursuant to 18 U.S.C. § 3622 and BOP Program Statement 5280.09, *Inmate Furloughs*. The issuance of furloughs is within the sole discretion of the BOP, and delegated to the Warden of each institution. Furloughs are being considered in conjunction with other avenues of transfer or release in an effort to expedite the transfer of inmates nearing the end of a sentence. Furloughs are not being used as a stand-alone basis for release from an institution.

The BOP has no legal authority to "release" inmates via parole or community supervision. Supervised release is a form of post-imprisonment supervision, although similar to parole, a term of supervised release does not replace a portion of the sentence of imprisonment, but rather is an order of supervision in addition to any term of imprisonment imposed by the sentencing court. See eg. *United States v. Reese*, 71 F.3d 582, 587 (6th Cir. 1995) ("supervised

4

release is ... a sentence in itself ...").

    IV.    Updated COVID-19 Data From Elkton

The BOP's considerable efforts to protect inmates at Elkton and throughout the United States from the COVID-19 pandemic are showing positive results. The following information is accurate as of May 5, 2020.

**Testing** – On April 16, 2020, Elkton received an Abbott testing machine and 250 testing cassettes. The Abbott machine was removed on April 21, 2020.  A second Abbott machine was delivered on April 29, 2020, with an additional 250 test cassettes.  Elkton is currently testing all inmates in quarantine who are pre-release.  These inmates are generally asymptomatic.  Elkton Health Services have coordinated with an outside laboratory to complete mass testing.  That is pending approval.  With approval, that testing could be immediately available to the institution.

**Protective Equipment** – Inmates were provided two surgical masks initially, and an additional two cloth masks when they became available.

**Quarantine** – Currently there are 36 inmates in quarantine at the main facility and six inmates in quarantine at the Satellite Camp.

**Hospitalizations –** 20 Inmates remain hospitalized or in rehabilitation facilities. No new inmates have required hospitalization since May 2, 2020.  8 inmates in hospitalization are intubated. This number has remained stable.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:   */s/ James R. Bennett II*
        James R. Bennett II (OH #0071663)
        Sara E. DeCaro (OH #0072485)
        Assistant United States Attorneys
        United States Courthouse
        801 West Superior Ave., Suite 400
        Cleveland, Ohio 44113
        216-622-3988 - Bennett
        216-522-4982 - Fax
        James.Bennett4@usdoj.gov
        Sara.DeCaro@usdoj.gov

        *Attorneys for Respondents*