# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CRAIG WILSON, et al. | ) CASE NO.: 4:20CV794 |
| | ) |
| Petitioners, | ) JUDGE JAMES S. GWIN |
| | ) |
| v. | ) |
| | ) |
| MARK WILLIAMS, Warden of Elkton | ) RESPONDENTS' OPPOSITION TO |
| Federal Correctional Institution, et al., | ) PETITIONERS' EMERGENCY MOTION |
| | ) TO CIRCULATE NOTICE TO |
| Respondents. | ) CONDITIONAL CLASS MEMBERS |

## INTRODUCTION

Now come Respondents Mark Williams, Warden of Elkton Federal Correctional Institution and Michael Carvajal, Director of Federal Bureau of Prisons, in their official capacities ("Respondents"), and hereby respectfully oppose Petitioners' Emergency Motion to Circulate Notice to Conditional Class Members.

On May 7, 2020, this Court held a hearing during which Petitioners requested to submit to the inmates at Elkton a questionnaire to determine whether the inmates believed that they had a condition that would qualify them for inclusion in this action and whether they wanted to opt out of this action. (Transcript of May 7, 2020, Status Conference, ECF No. 55 PageID # 724-28.) Petitioners advised that they could provide a proposed questionnaire "very quickly." (*Id.* at PageID # 729.) The Court instructed Petitioners to provide it to Respondents by "tomorrow…" (*Id.*) However, Petitioners waited until 7:15 p.m. on Friday, May 8, 2020, to submit their proposed questionnaire for review.

At approximately midnight, counsel for Respondents called Petitioners' counsel to

1

discuss the notice. Respondents' counsel explained several concerns with the proposed Notice. Respondents counsel further explained that the individuals at the prison who needed to weigh in on the logistics for providing the notice would not be available until Monday morning. As a result, counsel for Respondents explained that a more fulsome discussion could not occur until Monday morning.

Petitioners filed their Emergency Motion on Sunday, May 10, 2020, claiming a lack of response by Respondents, without informing the Court of the parties' conversation on Friday night. Respondents submit that the the proposed notice is defective and the Court should reject or modify it, for several reasons. The language advising proposed class members that they have the right to opt-out of the litigation in the future is legally improper. Because this is proceeding as a Rule 23(b)(2) class action involving exclusively injunctive relief, it is a "mandatory" class in which class members do not get to choose whether or not to participate. Petitioners' concession that class members must be given the opportunity to decline participation exposes the impropriety of class treatment. No single uniform injunction can possibly resolve the rights of all class members – many of whom will not want to participate – rendering certification under Rule 23(b)(2) impermissible.

In addition, even if the Court could order an opt-out procedure, the multi-phase process proposed by Petitioners is improper. Class members should not be allowed to wait and see what relief they are entitled to before deciding whether they want any relief at all. This would result in a tremendous waste of resources at a time when the parties can least afford it.

The notice is also improper to the extent it suggests the Court has ordered inmates with *any* medical condition are entitled to relief. As explained below, any notice approved by the Court should be revised to accurately reflect the Court's ruling.

Finally, Petitioners' proposed procedures for distributing the notices and producing medical records require several modifications.

## LAW AND ARGUMENT

I. OPT-OUT RIGHTS ARE NOT PERMISSIBLE IN RULE 23(b)(2) CLASS ACTIONS SEEKING ONLY INJUNCTIVE RELIEF

Petitioners' proposed notice purports to inform inmates that they will "have the right to opt out of this class action." This statement is improper – and wrong as a matter of law – because Petitioners have sought class certification exclusively under Rule 23(b)(2). That subsection permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). Accordingly, Rule 23(b)(2) classes are "mandatory," in that "opt-out rights" for class members are deemed unnecessary and are not provided under the Rule. *See id.*; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

In injunctive-relief-only cases like this one, opt-out rights are not just noncompulsory, but affirmatively impermissible. Simply stated, "there is no opt-out right" in a class action under Federal Rule of Civil Procedure 23(b)(2). *Gray v. Hardy*, 826 F.3d 1000, 1009 (7th Cir. 2016). Allowing opt-outs, as Petitioners now propose, "would permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 252-53 (3d Cir. 1975). "Members … cannot opt out of Rule 23(b)(2) classes, for the relief is indivisible."

3

*Senegal on behalf of a class v. JPMorgan Chase Bank, N.A.*, 939 F.3d 878, 880 (7th Cir. 2019); *see also Day v. NLO*, 851 F.Supp. 869, 885 (S.D. Ohio 1994) ("Opting out is generally not reasonable because plaintiff-by-plaintiff injunctive relief is not practical.").[1]

By conceding that Elkton inmates "have the right to opt out of this class action," Petitioners admit that this case cannot properly be certified under Rule 23(b)(2). Some inmates will want to participate; others will not. Some will be eligible for compassionate relief or home confinement; others will be eligible only for transfer to another institution, perhaps with higher security. In all events, it is plain that the Court cannot issue *any* injunction that will appropriately resolve the claims of the entire class. As the Supreme Court has explained, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360. Accordingly, the opt-out language in Petitioners' proposed notice is legally erroneous and serves only to confirm that their motion to certify the class must be denied.[2]

II. **PETITIONERS' PROPOSAL TO ALLOW INMATES TO OPT-OUT AFTER A DETERMINATION IS MADE REGARDING APPROPRIATE RELIEF IS**

---

[1] While some courts have permitted opt-out rights in class actions certified under Rule 23(b)(2), such procedure is permissible, if at all, exclusively in so-called "hybrid" class actions involving requests for a combination of monetary and injunctive relief. *See UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *31 (E.D. Mich. Mar. 31, 2006) (quoting *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 593, 603 n. 26, 605 (E.D.Mich.1996)) ("Any discretionary provision of opt-out rights under Rule 23(b)(2) is appropriate only in "hybrid" cases" in which both money damages and injunctive relief are sought, or where "individual class members may be able to make even stronger claims based on their own individual circumstances.").

[2] Moreover, it definitively exposes the conflicting interests within the class, which foreclose the requisite findings of commonality, typicality, and adequacy of representation.

IMPROPER, WASTES RESOURCES, AND FURTHER DEMONSTRATES WHY CLASS CERTIFICATION SHOULD BE DENIED

Petitioners' proposed notice provides that:

> It is possible that the Warden, the Bureau of Prisons, or the court may find that you are not eligible for home confinement, furlough, or release, and that your only choice is to move to a different prison or stay at Elkton. That other prison could be higher security than Elkton, but would be better than Elkton for social distancing. IF THAT HAPPENS, YOU CAN DECIDE LATER TO STAY AT ELKTON.

(ECF No. 59-1, PageID # 840.) It goes on to state that "you can opt-out later…" (*Id.*) Even if the Court could provide for opt-outs in a Rule 23(b)(2) injunctive relief class action, the opt-out procedure proposed by Petitioners is improper.

Respondents have expended tremendous resources working throught the inmates' potential eligibility for the various remedies the Court has identified. One of those remedies is transfer to another institution. Evaluating potential transfers for every one of the hundreds of class members is extraordinarily time consuming and must be done on a case-by-case basis. Indeed, it perfectly illustrates why this case is unsuitable for class treatment. In any event, however, inmates should not get to force BOP to find a workable destination for them, only to have the inmate then decide he wants to stay at Elkton. To waste valuable limited resources in the middle of a pandemic would be, to put it mildly, wholly inappropriate. Moreover, it is not how the legal process works – litigants cannot wait until a case is over to decide whether they desire the outcome. Likewise, class members do not get to wait for the Court to enter an injunction on their behalf, only to say, in effect, "thanks, but no thanks," and ask to return to the position they were in before the lawsuit was filed. Thus, to the extent the Court permits any opt-out procedure, it should occur immediately, and the language in the notice indicating inmates will have a second opportunity to opt-out in the future should be stricken.

III. THE PROPOSED NOTICE IS MISLEADING BECAUSE IT IMPROPERLY IMPLIES THAT ANYONE WITH ANY MEDICAL CONDITION QUALIFIES FOR CLASS MEMBERSHIP

Petitioners' proposed notice states that the Court's preliminary injunction order "applies to all prisoners age 65 or older OR with medical conditions." This statement is misleading. In its Order, the Corut specifically "limit[ed] the subclass to those identified by the CDC as being at higher risk." [3] The CDC guidance relied on by the Court explains that "older adults and people of any age who have serious underlying medical conditions" face a higher risk for severe illness. The CDC identifies a number of specific, serious medical conditions giving rise to such risk, which the Court expressly incorporated into its Order.[4] The proposed notice's explanation of the Court's ruling, however, ignores the limiting language the Court adopted from the CDC guidance in defining the subclass, instead suggesting the Order covers everyone with "medical conditions." This threatens to mislead inmates into believing they may qualify for relief by presenting evidence of any medical condition, regardless of its severity or likelihood of increasing the risks associated with COVID-19. Accordingly, the notice should be revised to make clear that only those with serious medical conditions recognized as increasing a person's risk for severe illness from COVID-19.

IV. PETITIONERS' PROPOSED DISTRIBUTION PROCEDURES REQUIRE MODIFICATION

In their motion, Petitioners propose the following process for providing the Notice to

---

[3] ECF No. 22 at 12 n.50 (citing CDC, Coronavirus Disease 2019: People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April 20, 2020).

[4] Elsewhere in the proposed notice, above the description of the Court's Order, Petitioners propose to list the various conditions identified by the CDC as presenting increased risk (and by the Court as qualifying an individual for subclass membership), but include as another category: "Other/Please specify." Although Respondents do not object to soliciting this information from inmates, the proposed notice's description of the Court's Order as encompassing anyone with "medical conditions" is nevertheless misleading.

inmates at Elkton:

1.      Petitioners are to print and ship to Elkton 2,400 printed copies of a questionnaire flyer and medical authorization (attached as Exhibit 1), and sufficient copies of an informational poster to allow for widespread display (Exhibit 2). Petitioners are also to provide 2,400 individual envelopes and an addressed shipping box or boxes for return of the collected questionnaires.

2.      Respondents are to post copies of the informational poster in highly visible places throughout FCI Elkton and the satellite camp, including at least two per housing unit, at least two in the mess area, and at least one apiece in any other common areas.

3.      Respondents are to distribute one copy to each prisoner of: (1) the questionnaire flyer and medical authorization, and (2) an envelope, with prisoner mail or through a similar mechanism reasonably calculated to ensure that each prisoner receives copies of each.

4.      Respondents are to collect sealed envelopes containing completed flyers and medical releases, whether through mail collection or other methods reasonably calculated to ensure compliance. Though use of sealed envelopes will ensure reasonable security of personal medical information, Petitioners would agree to reasonable alternative measures to serve the same purpose.

5.      By close of business on Thursday, May 14, Respondents are to ship by overnight express all collected envelopes to the address provided using the shipping box or boxes. Petitioners are to Respondents' reasonable costs of shipping in the provided box or boxes.

This proposed process creates several security and staffing concerns.  Accordingly, Respondents propose the following modifications:

A.      Petitioners will pre-stuff the envelopes with the questionnaire and authorization for

delivery as a single packet to the inmates. This is requested to reduce staff time and to ensure that each inmate gets all of the items.

B.     Instead of posting a poster, BOP staff will send a trulinks notice to every inmate at Elkton with the information on the poster. This ensures that every inmate has notice without requiring staff to take the time to find locations for and to post the posters. Further, posters can create a security and health hazard. If Petitioners refuse the trulinks notice, then all posters must be laminated and one will be posted in each housing unit.

C.     Petitioners will provide 25 boxes that can be placed in each unit for the return of the envelopes. These boxes will have a small opening in the top of the box to allow for the inmates to deposit the envelopes into the box (i.e. a ballot box). If Petitioners desire for these boxes to be locked, they will bring the boxes to the prison unlocked to allow staff to see inside first and then may be locked in staff's presence. Because the Court set a cut-off of Thursday, May 14, 2020, for the return of the questionnaire, BOP needs time to collect the boxes and prepare them for return. Therefore, Petitioners will return on Friday, May 15 after 12:00 noon to retrieve the boxes. Alternatively, Petitioners may provide additional boxes to place the ballot boxes in for shipping and to pay for federal express shipment of the boxes to be sent back to Petitioners. If Petitioners choose this option, the boxes will be submitted to federal express on May 15, 2020.

D.     Petitioners will provide counsel for Respondents copies of all returned questionnaires and releases by May 17, 2020. Those questionnaires may be marked Attorney Eyes only if Petitioners believe it is appropriate.

V.     <u>DISCLOSURE OF INMATE MEDICAL INFORMATION BY BOP</u>

Petitioners have also requested that the Court order Respondents to produce copies of medical records "within one business day." Due to the fact that this could potentially involve

more than a thousand inmates, one business day is unreasonable and impossible for BOP to comply with. Instead, BOP believes that it can provide all of the records within two weeks of receiving the request from Petitioners. Further, BOP can produce the medical records on a rolling basis during the two weeks and would prioritize the medical records of certain inmates upon request by Petitioners.

## CONCLUSION

Based on the foregoing, Respondents respectfully urge this Court to deny the Emergency Motion to Circulate Notice to Conditional Class Members on the grounds that the class cannot be certified under Federal Rule of Civil Procedure 23(b)(2). Alternatively, Respondents request that the Court exclude from the proposed notice any reference to inmates' right to opt out of the class, or, if the Court finds an opt-out process is necessary, require that any such opt-out rights be exercised immediately (and modify the notice accordingly). Respondents further request that (a) the notice be modified to clarify that the Court's preliminary injunction order applies only to those with serious medical conditions in accordance with the CDC's guidance regarding people who are at higher risk for severe illness; and (b) the notice distribution and medical records procedures be modified as set forth herein.

Signatures on next page

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: <u>/s/ James R. Bennett II</u>
James R. Bennett II (OH #0071663)
Sara DeCaro (OH #0072485)
David M. DeVito (CA #243695)
Assistant United States Attorneys
United States Court House
801 West Superior Ave., Suite 400
Cleveland, Ohio 44113
216-622-3988 - Bennett
216-522-4982 - Fax
James.Bennett4@usdoj.gov
Sara.DeCaro@usdoj.gov
David.DeVito@usdoj.gov

*Attorneys for Respondents*