IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WILSON, ET AL, | * | |
| | * | |
| Petitioners | * | CASE NO. 4:20-CV-00794 |
| | * | |
| v. | * | |
| | * | |
| WILLIAMS, ET AL, | * | JUDGE GWIN |
| | * | |
| Respondents | * | |

### DECLARATION OF ANDRE MATEVOUSIAN

I, Andre Matevousian, do hereby declare, certify and state as follows:

1. I am a citizen of the United States. I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice, as the Acting Assistant Director of the BOP's Correctional Programs Division in Central Office, located in Washington, D.C.

2. The Correctional Programs Division (CPD) develops activities and programs designed to appropriately classify inmates and promote the skills necessary to facilitate the successful reintegration of inmates into their communities upon release. CPD provides national policy direction and daily operational oversight of institution correctional services; intelligence gathering; counter terrorism efforts; management of inmates placed in the Federal Witness Security Program; inmate transportation; inmate sentence computations and designations; emergency preparedness; inmate discipline; and the review of sexually dangerous offenders. CPD staff are also responsible for planning, monitoring, and providing the delivery of programs and services such as case management, correctional systems, the agency's Victim and Witness Notification Program and the collection of court-ordered obligations through the Inmate Financial Responsibility Program. Additionally, the Correctional Programs Division

1



GOVERNMENT EXHIBIT B

is the liaison with Immigration Customs Enforcement and the U.S. Marshals Service. As Acting Assistant Director, I provide leadership and management oversight of the Correctional Programs Division.

3. I am aware of the underlying facts in this matter. I have been asked to discuss the Court's directive to transfer subclass members from FCI Elkton to other BOP facilities.

### The BOP's Security Designation, Custody Classification, and Institutional Designation Authority

4. The BOP's security designation, custody classification and institutional designation authority and procedures are set forth in BOP Program Statement 5100.08, *Inmate Security Designation and Custody Classification*,[1] and are described in relevant detail in the Declaration of Shannon Robbins, dated May 28, 2020. The statements made herein are largely based on those authorities.

### Operational Concerns with Institution to Institution Transfers

5. In compliance with the Court's April 22, 2020 Order in this matter, BOP is assessing institutional resources to determine the availability of space to transfer and house those FCI Elkton inmates who were deemed inappropriate or otherwise ineligible for release consideration.

6. This review must take into considerations the capabilities of other BOP institutions in affording these inmates appropriate COVID-19 measures, such as testing, single-cell placement, and social distancing opportunities, as well as the BOP's suspension of inmate internal movement, programming and security concerns.

---

[1] This program statement can be viewed in its entirety on the BOP's public website www.bop.gov via the Resources/BOP Policy tab.

7. FCI Elkton is a low security institution with an adjacent Federal Satellite Low located in Columbiana County in Northeastern Ohio. As these inmates potentially subject to transfer under the Court's Order would be transferred from a low security institution, BOP has had to account for each potential transferee institution's physical structure, layout, custody, and security level.

8. As stated above, low security institutions predominantly consist of dormitory or cubicle housing. As such, the Court's Order to place these inmates in single-cells will likely require transferring these inmates to higher security institutions that contain cell-type housing, where – while social distancing may be more easily achieved – they will intermingle with higher security inmates and will be housed in conditions more restrictive than required by their respective security level.

9. Another transfer consideration is the First Step Act of 2018 (FSA). Section 601 of the FSA requires the BOP to place inmate in facilities as close as practicable to their primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. Specifically, the FSA amended 18 U.S.C. § 3621(b) to state:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence."

10. Given the limited availability of single-cell bed space, the majority of the inmates potentially subject to transfer under the Court's Order would likely have to be transferred to institutions

outside of 500 driving miles of their primary residences, which may pose additional burdens upon family visitation.

11. The transfer and transport of approximately 750 inmates, during the COVID-19 pandemic, presents challenges to BOP operational resources, including transportation (e.g. bus and airlift operations) and institutional bed space availability as discussed at length in the Declaration of Shannon Robbins, dated May 28, 2020.

12. There are additional security concerns with housing low security inmates with higher security inmates, which may be the result of many of these transfers. In accordance with Program Statement 5100.08, *Inmate Security Designation and Custody Classification*, BOP takes steps to ensure that inmates are housed with other inmates commensurate with their respective security level. In my correctional experience and observation, generally, high security inmates have more frequent instances of assaults on other inmates and staff. Accordingly, the practice of housing similarly designated inmates together exists to mitigate risks of inmate-on-inmate assault.

13. Additionally, the demographics of inmates at FCI Elkton have a higher percentage of Sex Offenders, based upon the institution's available treatment programming. In my correctional experience and observation, high security inmates are less accepting of inmates with a Sex Offender designation. Accordingly, undoubtedly, the FCI Elkton inmates will request protective custody status and additional segregation status. Prolonged periods of segregation, or restrictive housing, is known to negatively impact mental health. Therefore, BOP may face an increase in the already high percentage of mental health issues in BOP's sex offender population.

14. As I understand the state of the pandemic, no COVID-19 test has proven fully accurate, and based upon CDC information, pre-symptomatic and asymptomatic individuals contribute to disease transmission. See https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html. Accordingly, even with appropriate testing, there is a risk that institutional transfers may spread the virus. Given that FCI Elkton has experienced a flattening of the epidemic curve, the transfer of this group of inmates is not necessary to properly protect inmates at FCI Elkton and may contribute to disease spread to other areas.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed on this 28th day of May, 2020.

Andre Matevousian, Acting Assistant Director
Correctional Programs Division
Federal Bureau of Prisons
Washington, D.C.