UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CRAIG WILSON, ERIC BELLAMY, KENDAL NELSON, and MAXIMINO NIEVES, on behalf of themselves and those similarly situated,<br><br>*Petitioners*,<br><br>v.<br><br>MARK WILLIAMS, warden of Elkton Federal Correctional Institutions; and MICHAEL CARVAJAL, Federal Bureau of Prisons Director, in their official capacities,<br><br>*Respondents*. | Case No. 20-cv-0794<br><br>Judge James Gwin |

**MEMORANDUM IN OPPOSITION TO
RESPONDENTS' EMERGENCY MOTION TO STAY**

**INTRODUCTION**

The deadly outbreak at Elkton Federal Correctional Institution ("Elkton") continues to take its toll. Though trumpeting a supposed decline in hospitalizations—a statistic that means little, 2d Goldenson Decl. ¶ 13 (Exhibit B)—Respondents were forced to amend their motion, mere hours after its filing, to retract their assertions. *See* ECF 101 (supplement noting that an additional Elkton prisoner was hospitalized). Indeed, with continued delays in testing, the full extent of the infection still remains unknown, but is plainly extreme. *See* ECF 100 (status report showing 312 COVID-positive results in recent weeks).

Meanwhile, Respondents' efforts to *comply* with this Court's April 22 injunction and May 19 enforcement order proceed slowly, yielding unimpressive numbers of people deemed even potentially eligible for home confinement, much less actually moved. *See* ECF 98-7 at 11. Respondents' simultaneous efforts to *resist and undo* this Court's orders, however, continue to suffer from no such lethargy. This Court's original injunction was entered on April 22. While

1

Respondents resisted the Court's initial instruction to produce a class list, *see* ECF 32 (order granting motion to compel), they moved both this Court and the Sixth Circuit for a stay pending appeal on April 28 and 30, respectively. ECF 30, 34. Both were denied. Subsequent proceedings revealed that Respondents had failed to comply with the Court's April 22 injunction in the meantime, prompting this Court's enforcement order on May 19. ECF 85; *see id.* at PageID# 1129.

Respondents reacted with an emergency application for stay to the Supreme Court on May 20—nominally challenging the April 22 order, but arguing both it and the May 19 order. The Supreme Court denied the stay on May 26, observing that Respondents had "not sought review of or a stay of the May 19 order in the U.S. Court of Appeals for the Sixth Circuit." No. 19A1041.

Yesterday, Respondents finally took the step of asking this Court to stay that order—and also asks it again to stay the April 22 order, which this Court has already observed that it is not at liberty to do under law of the case. *See* ECF 57. That motion is accompanied by several new self-serving declarations, but Respondents, despite having waited *ten days* after the May 19 enforcement order, claim they have no time to allow this Court to review and weigh them. Instead, they seek to have the Sixth Circuit—and failing that, the Supreme Court—exercise the fact-finding role, by filing a stay request on appeal less than an hour later. The motion before the Sixth Circuit threatens that, absent immediate relief there, Respondents will again seek Supreme Court intervention.[1]

---

[1] Though this Court gave Petitioners until Monday, June 1 to respond here, the Sixth Circuit has ordered that any response in that court be submitted today. Petitioners maintain that Respondents' approach of a 10-day delayed "evidence dump" on this Court, apparently to enable them to cite new factual material on appeal, is inappropriate. Nonetheless, in order to ensure that their rights are preserved on appeal, Petitioners must respond in kind, by submitting contrary

Respondents "bear[] the burden" to show that this Court should exercise its discretion to issue a stay. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (internal quotations omitted). Part of Respondents' appeal is improper, and the remaining part is foreclosed by previous rulings. But more important to the motion before this Court, Respondents' arguments are meritless. This Court has properly exercised jurisdiction and invoked a remedy under 28 U.S.C. § 2241; deliberate indifference is well-documented and legally supported; and the balance of equities plainly favors Petitioners.

## BACKGROUND

Respondents' narrative presents a highly one-sided account of the facts and procedural history of this action, as it stood on April 22, May 19, and today.

On April 22, this Court entered the preliminary injunction, finding that "the only truly effective remedy to stop the spread is to separate individuals," which was "impossible without the release of a portion of the population." PI Order, ECF 22, PageID# 361. Elkton is a low-security facility where prisoners are housed in units of about 150 men. 1st Novisky Decl., ECF 1-3, PageID# 51. Petitioner Wilson's unit (representative of Elkton) is divided into bunks, about 8 by 9 feet and not enclosed, which sleep two or three men. Wilson Decl., ECF 1-10, PageID# 90. Men are not separated inside units, where they share recreation space, sinks, and showers. *Id.*, PageID# 91.

This Court was already aware of the BOP's so-called "multiphase action plan." ECF 98-1 (hereinafter "Stay Mot.") at 2, PageID# 1168. Phase 2, implemented on March 13, started a grab-

---

evidence to this Court for its consideration and for subsequent citation on appeal. Petitioners therefore respectfully submit additional expert testimony and other evidence in support of this Opposition. *See* Exhibit A, 2d Novisky Declaration; Exhibit B, 2d Goldenson Declaration; Exhibit C, Questionnaires.

and-go meal system, for example. Dees Decl., ECF 10-1, PageID# 175–76. When prisoners get meals, "[s]ocial distancing is out the window," as they line up "to get through a 4-6 foot wide door." Arzola Decl., ECF 1-11, PageID# 96. And Phase 5, implemented on March 31, secured prisoners within these shared units. Dees Decl., ECF 10-1, PageID# 177. At "any given moment," prisoners in a unit are next to someone else. Bellamy Decl., ECF 1-7, PageID# 78. Phase 6, implemented on April 13, simply kept the measures in place. Dees Decl., ECF 10-1, PageID# 178.

This Court was also aware that these measures could not stop the spread of COVID-19. They left in place "shared spaces for bathing, eating, and sleeping," meaning "social distancing would be impossible to implement at Elkton." 1st Novisky Decl., ECF 1-3, PageID# 51. Staff continued to circulate in and out of the community and among prisoners. *Id.*, PageID# 52–53. When Petitioners sued on April 13, three prisoners had died. Petn., ECF 1, PageID# 2. Nine days later, that number had doubled. PI Order, ECF 22, PageID# 370.

And this Court had before it clear evidence that Respondents had not used the tools at their disposal to move prisoners. The Attorney General had "direct[ed]" BOP to "maximize appropriate transfers" of vulnerable prisoners out of Elkton. Apr. 3 Barr Memo, ECF 10-3, PageID# 197.[2] Yet no prisoners had been moved. PI Tr., ECF 40, PageID# 586 (six identified as eligible but not transferred to home confinement; 32 denied).

---

[2] Respondents state that the Attorney General provided criteria to implement this directive. BOP's Acting Senior Deputy Assistant Director issued the guidance document they rely on. Brewer Memo, ECF 10-3, PageID# 200–01. Respondents do not acknowledge that the Attorney General's guidance does not deem, for example, "prior violent offenses" (at 5) disqualifying. Mar. 26 Barr Memo, ECF 10-3, PageID# 196. Nor do they acknowledge that the Brewer guidance was superseded, and current guidance does not deem any prisoner categorically ineligible for home confinement. Hurwitz Memo, ECF 80-1, PageID# 1113.

4

This Court entered a preliminary injunction on that record. It limited the injunction to a subclass of medically-vulnerable prisoners—those at highest risk, using the CDC's definition. PI Order, ECF 22, PageID# 363. For these prisoners, "continued imprisonment at Elkton is unconstitutional given the COVID-19 outbreak," rendering their claim "cognizable under 28 U.S.C. § 2241." *Id.*, PageID# 362. The "failure to separate" prisoners was deliberate indifference to the thread of spreading COVID-19. *Id.*, PageID# 367.

The equities favored preliminary relief. Petitioners sought only "moving vulnerable inmates to various other types of confinement" where they would be safer. *Id.*, PageID# 369. A 14-day quarantine policy already in place meant that transfers posed no risk. *Id.*; Apr. 3 Barr Memo, ECF 10-3, PageID# 197. And stopping the spread of COVID-19 would protect prisoners, staff, *and* the community around Elkton where the staff lives. PI Order, ECF 22, PageID# 369.

The scope of the relief was also limited. Petitioners did not ask "to throw open the gates" at Elkton, and this Court expressly did not do that. *Id.*, PageID# 369. It required Respondents to identify the prisoners in the medically-vulnerable subclass. *Id.*, PageID# 371. Then, it required Respondents to evaluate their eligibility for release by May 7. *Id.* If members were ineligible, it ordered Respondents to transfer them "to another BOP facility where appropriate measures" to avoid COVID-19, "may be accomplished." *Id.*, PageID# 371–72.[3]

Three courts declined to stay the April 22 preliminary injunction. When the Sixth Circuit and this Court did so, they rejected many of the same arguments Respondents raise now. The Sixth Circuit agreed with this Court that Petitioners' claims are properly raised on habeas; found that this Court did not abuse its discretion on the record before it; and that Respondents had forfeited their class certification challenge. May 4 Order, at 5. This Court followed suit, based on

---

[3] Respondents concede that the deadlines for the first two requirements have passed.

5

both the law-of-the-case doctrine and the merits. Stay Order, ECF 57. And the Supreme Court did so because Respondents also sought to stay the May 19 enforcement order, without seeking relief from this Court first. Order, No. 19A1041.

This Court entered that enforcement order on a record that showed Respondents had "thumb[ed] their nose" at the preliminary injunction. Enforcement Order, ECF 85, PageID# 1129. Respondents identified 837 members of the medically-vulnerable subclass. *Id.*, PageID# 1126. It deemed *five* eligible for home confinement, with six more "maybe" qualifying. *Id.* A hearing revealed that this was the result of Respondents deeming whole categories of the subclass categorically ineligible for home confinement. Tr., ECF 76, PageID# 1004–05, 1026; Spreadsheet, ECF 78-1, PageID# 1060–72. As for other mechanisms—furlough, compassionate release, or transfer—Respondents identified no members "whose confinement has actually been enlarged" because of the preliminary injunction. Enforcement Order, ECF 85, PageID# 1126.

Yet the risks had not diminished. Respondents had run 524 COVID-19 tests (about 22% of the Elkton population, on the unlikely assumption no prisoner has been tested twice). It had results for only 230, with 24% testing positive. *Id.*, PageID# 1124. By then, nine prisoners had died of COVID-19. The Court thus entered a limited order to enforce. As to home confinement, it ordered Respondents to re-evaluate subclass members without treating certain factors as categorical barriers to relief. *Id.*, PageID# 1124.[4] Respondents had until May 25 to comply. *Id.*, PageID# 1129-30. As to compassionate release, it ordered Respondents to clarify bare-bones explanations for denying members' requests by May 21, and to act on new ones within 7 days.

---

[4] Respondents claim that the order required them to "disregard" certain factors. But the order speaks in terms of "requirement[s]" and being "deemed ineligible." Enforcement Order, ECF 85, PageID# 1129. That reading is bolstered by BOP's own guidance, which does not deem any factor as a categorical bar. *See supra* note 2. Of course, this Court is best positioned to resolve disputes over what its order means.

6

*Id.*, PageID# 1131.[5] And as to any members ineligible for that relief, it ordered Respondents to show cause by May 26 why it could not transfer them to a safer facility. *Id.*, PageID# 1132.[6]

Respondents ask this Court to enter a stay based on a disputed, evolving record with little time to consider abruptly-added new evidence. Just hours after moving for a stay, for example, Respondents had to revise their statement to note that another Elkton prisoner has been transferred to the hospital. ECF 101. To assert that conditions at Elkton have improved, they cite contested materials submitted only one business day before they demand a ruling. ECF 98-2 through 98-10. So too with a new conclusory "[u]pon information and belief" declaration underlying their implication that the few subclass members it has finally identified as eligible for home confinement do not meet BOP's guidance. Hurwitz Decl. ¶ 27. Even the meaning of the enforcement order Respondents seek to stay appears to be disputed, but rather than asking this Court to clarify or modify it, they have rushed to appeal.

## ARGUMENT

### I. <u>Respondents Have Failed to Demonstrate a Strong Likelihood of Success on Appeal</u>

#### A. Respondents' Motion Is Improper

As to the April 22 order, the legal and factual questions presented by Respondents' motion are governed by the law of the case. *See* ECF 57. They have been weighed and reviewed on appeal, and the Sixth Circuit has held that this Court did not abuse its discretion. Indeed, every level of the federal judiciary has ruled that the April 22 preliminary injunction will not be stayed pending appeal, and are bound by appropriate principles of deference and law of the case.

---

[5] Without a decision from BOP, prisoners must wait 30 days to file a compassionate release motion in the sentencing court. 18 U.S.C. § 3582(c)(1).

[6] Respondents concede (at 8) these deadlines have mostly passed. The requirement to decided compassionate release applications within 7 days remains.

Respondents also did not timely seek a stay of the May 19 order in this Court. Indeed, they waited ten days, and then imposed upon this Court a manufactured emergency requiring a ruling in one business day. *See* ECF 98-1 at PageID# 1. And they gave this Court no time to consider the motion by filing a motion almost immediately in the Court of Appeals. Regardless, as discussed above and below, Respondents' raft of tired arguments and new declarations offer no basis for this Court to stay its own rulings.

### B. Petitioners' Claim Is Properly Brought Under § 2241, Rendering the Prison Litigation Reform Act (PLRA) Inapplicable

Habeas corpus allows prisoners to challenge unlawful confinement. 28 U.S.C. § 2241; *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973). When such a challenge is based on "the execution or manner in which the sentence is served," it is properly brought under § 2241. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).

As the Sixth Circuit held, Petitioners are "challenging the fact of the[ir] confinement." Order at 3 (May 4, 2020). Releasing medically-vulnerable prisoners from Elkton is "the only truly effective remedy" for the unfolding harm. PI Order, ECF 22, PageID# 361. Petitioners therefore properly brought their claim under § 2241, because they challenge the "execution or manner" of their sentences (serving them amid an inadequately-addressed disease outbreak, in a place where social distancing is impossible) and because "no set of conditions would be constitutionally sufficient" to fix the problem. Order at 3 (May 4, 2020); *see Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011); *see also Terrell v. United States*, 564 F.3d 442, 446–48 (6th Cir. 2009).

That Petitioners have used the phrase "conditions of confinement" to describe the problem is irrelevant. Although Sixth Circuit precedent holds that "§ 2241 is not the proper vehicle for a prisoner to challenge conditions of confinement," *Luedtke v. Berkebile*, 704 F.3d

8

465, 466 (6th Cir. 2013), as just explained, Petitioners have consistently maintained—and this Court found—that it would be impossible to fix the conditions within Elkton. The only remedy is release from confinement at Elkton. *See Adams*, 644 F.3d at 483; *Terrell*, 564 F.3d at 446–48.

Respondents argue that Petitioners' requested relief would not "change the court-imposed sentence." Stay Mot. at 7, PageID# 1173. But nothing in the law suggests that all habeas claims must challenge the sentence itself. *See, e.g., Bailey v. Wainwright*, 951 F.3d 343, 347 (6th Cir. 2020). Section 2241 claims need do no such thing. *See Terrell*, 564 F.3d at 448 (claim seeking in-person parole hearing cognizable under § 2241); *Luedtke*, 704 F.3d at 466 (same, challenging exclusion from "Inmate Financial Responsibility Program"); *see also United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991) (place-of-confinement challenges properly brought via § 2241).

Because Petitioners' claim is proper under § 2241, this Court correctly noted its "enlargement" authority. PI Order, ECF 22, PageID# 359; *see Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990); 28 U.S.C. § 2243 ("The court shall … dispose of the matter as law and justice require."). It did not abuse its discretion with such interim relief, but correctly concluded that Petitioners' claims are "substantial," PI Order, ECF 22, PageID# 359–62, and that the "circumstances" of Elkton's COVID-19 outbreak are "exceptional," *Dotson*, 900 F.2d at 79. Its order did not require the release of any particular prisoner or "throw open the gates." PI Order, ECF 22, PageID# 369; *see id.*, PageID# 370–72.

Because this is a "habeas corpus proceeding[] challenging the fact or duration of confinement in prison," the PLRA is inapplicable. 18 U.S.C. § 3626(g)(2)). Respondents' passing suggestion, meanwhile, that 18 U.S.C § 3621(b) might bar jurisdiction is baseless. Petitioners do not ask this Court to "decide where to house" them, nor has this Court done so, but rather claim that their confinement at Elkton is unconstitutional. That challenge is consistent with

9

18 U.S.C. § 3621(b), *cf.* id. (assignments must "meet[] minimum standards of health and habitability"), which in any event cannot divest federal courts of power to remedy unlawful detention, *see* U.S. Const. art. I, § 9, cl. 2; *Boumediene v. Bush*, 553 U.S. 723, 771 (2008); *Martinez-Brooks* v. *Easter*, No. 3:20-cv-00569, 2020 WL 2405350, at *15 (D. Conn. May 12, 2020) ("I am not 'review[ing]' the BOP's 'designation of a place of imprisonment' under subsection 3621(b)," and "to the extent there is any ambiguity about whether Section 3621(b) or any other statute bars judicial review … I would construe it not to do so to avoid the constitutional question that would arise from a wholesale bar on judicial review in the circumstances of this case.").

### C. This Court Did Not Abuse Its Discretion In Finding Petitioners Likely to Show Deliberate Indifference

Prisons may not knowingly incarcerate prisoners "under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), including from infectious disease, *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Respondents are unlikely to succeed on appeal of this matter, as this Court did not abuse its discretion in finding both the objective and subjective components of deliberate indifference satisfied.

For the objective standard, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Richko v. Wayne Cty.*, 819 F.3d 907, 917 (6th Cir. 2016) (citation omitted). That test is met where prisons failed to provide toothpaste, *Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010), and exposed prisoners to tobacco smoke, *Helling*, 509 U.S. at 35; *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005). COVID-19 kills slowly and painfully, while those who survive may sustain permanent organ damage. Six Elkton prisoners have died since this case was filed. That risks exist "nationwide," Stay Mot. at 9, PageID# 1175, changes nothing: prisons are dangerous settings for COVID-19, and this Court

concluded that Elkton is uniquely dangerous among prisons. *See* PI Order, ECF 22, PageID# 354–357; *see also* 1st Novisky Decl., ECF 1-3, PageID# 50–52; 1st Goldenson Decl., ECF 1-4, PageID# 64–66. "Petitioners obviously satisfy this component," PI Order, ECF 22, PageID# 367.

This Court also properly exercised discretion in finding Petitioners likely to satisfy the subjective prong. "A prisoner is not required to show that he was literally ignored by the staff … only that his serious medical needs were consciously disregarded." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014) (cleaned up). Custodians are deliberately indifferent if they persist in a course of action that they know to be ineffective. *See, e.g.*, *Richmond v. Huq*, 885 F.3d 928, 944 (6th Cir. 2018); *Darrah v. Krisher*, 865 F.3d 361, 369 (6th Cir. 2017); *Phillips v. Roane Cty.*, 534 F.3d 531, 541 (6th Cir. 2008); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

Respondents knew about the risks within Elkton, yet never addressed them adequately. They continued forcing prisoners to live in crowded units where social distancing is impossible, making the continued spread of COVID-19 a foregone conclusion. *E.g.*, PI Order, ECF 22, PageID# 356; 1st Novisky Decl., ECF 1-3, PageID# 48–52; Nelson Decl., ECF 1-5, PageID# 70; Nieves Decl., ECF 1-8, PageID# 82; Wilson Decl, ECF 1-10, PageID# 91; Arzola Decl., ECF 1-11, PageID# 95–96. Even when the Attorney General directed BOP to "move with dispatch" to move Elkton prisoners to home confinement, Apr. Barr Mem., ECF 10-3, PageID# 197, Respondents took no meaningful steps to move these low-security prisoners to safety, *see* Cole Decl., ECF 10-2, PageID# 189, 193; Transcript, ECF 40, PageID# 586, while conducting virtually no testing at Elkton, *see* Dees Decl., ECF 10-1, PageID# 183.

Nothing had happened to change this assessment when this Court entered the May 19 enforcement order. Respondents had made "paltry" grants of home confinement, "thumbing their

11

nose at" their enhanced authority and the Attorney General's exhortations and treating whole categories of the subclass as ineligible. Enforcement Order, ECF 85, PageID# 1129; *see id.*, PageID# 1126; Transcript, ECF 76, PageID# 1004–05, 1026; Spreadsheet, ECF 78-1, PageID# 1060–72. They had opposed nearly any compassionate release, and made no use of furloughs. Enforcement Order, ECF 85, PageID# 1126. After testing had lacked "for months," still only 524 tests had been performed, and results were delayed. *Id.*, PageID# 1124 (no results for more than 96 hours). Petitioners remained likely to succeed on their deliberate-indifference claim, underscored by Respondents' intransigence.

Post-order record materials provided by Respondents do not change the equation. Indeed, the picture is less rosy than the one Respondents paint. Their testing suffers from a *weeklong* lag, Status Report, ECF 88, PageID# 1139, and "does not identify individuals who are infected but presymptomatic … [or] those who will become infected." 2d Goldenson Decl. ¶ 13, obliterating its usefulness for monitoring infections meaningfully and directing quarantines. Contrary to Respondents' argument, a short-term decline in hospitalizations does not show that the infection is under control, 2d Goldenson Decl. ¶ 13, and, as they disclosed after filing, their motion omitted a prison hospitalized on Friday, ECF 101. Their meager testing data shows that 20-25% of the population is still testing positive. *See* Status Report, ECF 97. *Compare also* Federal Bureau of Prisons, COVID-19, https://bit.ly/bopcovid (last visited May 30, 2020) (332 current infections, second highest among federal facilities), *with* Burnside Decl., R. 98-2, PageID# 1188 (484 total positive tests as of May 27, with "a significant number" "still pending"). The inevitable movement and lack of social-distancing between prisoners within units—as well as prisoners' lack of social distancing with staff moving between units—facilitates spread and

leaves Elkton prisoners subject to an inordinately high ongoing risk of infection. 2d Novisky Decl. ¶¶ 7-8; 2d Goldenson Decl. ¶ 11.

Meanwhile, Respondents still refuse to protect medically-vulnerable prisoners. One court, watching closely, concluded this week that Respondents may *never* comply. *United States v. Guzman*, No. 13-CR-576-1, 2020 WL 2781713 (N.D. Ill. May 28, 2020). Indeed, Respondents now argue for the first time that "transfer to home confinement is an improper remedy." Stay Mot. at 10, PageID# 1176. They offer no legal basis for this assertion, likely because there is none. Congress (via the CARES Act) and the Attorney General, *see* Apr. Barr Mem., ECF 10-3, PageID# 197, authorized and encouraged this tool. Respondents' distaste for it underscores their conscious disregard for the substantial risk of serious harm to medically-vulnerable prisoners.

## II. The Remaining Factors Weigh Against a Stay

For irreparable harm,[7] Respondents offer the audacious claim that their discretion over prisoner placement supersedes prisoners' constitutional rights. *See* Stay Mot. at 11–12, PageID# 1177–78. That position (which is also incorrect with regard to jurisdiction, *see* section I.C, *supra*) is absurd; judicial review to protect constitutional rights is not irreparable harm. *See Martinez-Brooks*, 2020 WL 2405350, at *15; *cf.* U.S. Const. art. I, § 9, cl. 2; *Boumediene*, 553 U.S. at 771; *cf. also* 18 U.S.C. § 3621(b) (prison assignments must "meet[] minimum standards of health and habitability"). There is simply no basis for the radical suggestion that federal-court review of unconstitutional confinement in a federal prison constitutes irreparable harm to the confiners.

---

[7] Respondents are incorrect that its interest and the public's "merge." Stay Mot. at 11, PageID# 1177 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The interests merge when the government is *opposing* a stay, 556 U.S. at 435, because that posture implicates the public's interest in "prompt execution" of valid orders. *Id.* at 436. Here, the same reasoning cuts in the opposite direction. Respondents must show both irreparable harm *and* that a stay is in the public interest.

13

Nor is this Court intruding on Respondents' discretion. Rather, Petitioners respectfully submit that the May 19 Order was no more than was absolutely necessary in light of Respondents failure to comply in good faith with the April 22 preliminary injunction. Respondents have "forfeited the advantage of deference" after a "pattern of delays" and "new objections substituted for old ones." *Battista v. Clarke*, 645 F.3d 449, 455 (1st Cir. 2011); *see* Enforcement Order, ECF 85 at PageID# 1129 ("By thumbing their nose at their authority to authorize home confinement, Respondents threaten staff and they threaten low security inmates."). "Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011); *see also Hutto v. Finney*, 437 U.S. 678, 689 n. 9 (1978).

Respondents' security concern over home confinement is ill-founded. First, the Court has ordered no one released, as it clarified repeatedly in the April 22 order. PI Order, ECF 22, PageID# 359, 370, 371. Second, every prisoner in Elkton is low-security, and the Medically-Vulnerable Subclass is, by definition, disproportionately elderly or infirm. Third, Respondents have not shown that any prisoner to be transferred under the May 19 order is actually dangerous. *Compare* 2d Novisky Decl. ¶ 11 (noting that "subclass identified in this case [is] a low public safety threat"). Respondents maintain authority to determine—based on recidivism risk score, outstanding detainers, institutional conduct, and other factors—that a prisoner cannot be released.

In addition, the May 19 order's primary effect is to halt Respondents' practice of improper automatic rejections based solely on criteria that are *not* dispositive of home confinement—such as a minor incident report, or where "the only basis for denial is a prior violent offense." *See* Enforcement Order, ECF 85, PageID# 1129. *Compare, e.g.*, Notice of

14

Home Confinement Criteria, ECF 80, PageID# 1110 ("Inmates who have received a 300 or 400 series incident report in the past 12 months may be referred for placement"); Hurwitz Decl., ECF 98-7, PageID# 1216–17 (no mention of prior violence as a dispositive factor), *with* Home Confinement Spreadsheet, ECF 78-1 at Row 52 (prior to May 19 order, low-risk prisoner rejected based on robbery 35 years ago); Row 55 (low-risk prisoner rejected, "history of violence" 23 years ago); Row 486, 489 (low risk, "prior violence"); Rows 713, 724 (low risk, 2019 300-series incident reports).

Elkton prisoners are not "harmed" by being transferred away from a deadly outbreak. This Court ordered that if Respondents receive requests to remain at Elkton, it must consider them.[8] Mitigation of any "harm" is thus in Respondents' hands. Enforcement Order, ECF 85, PageID# 1132. Many prisoners who have requested to stay at Elkton did so only because they fear Respondents will move them to higher-security prison punitively. *See* Questionnaires, Exhibit C.

Nor would transfers unduly risk spreading COVID-19. Pre-transfer quarantines alleviate that concern, PI Order, ECF 22, PageID# 369; 2d Goldenson Decl. ¶ 12, as does testing. The Court did not abuse its discretion in concluding that the greater risk lies in leaving Elkton as a source of infection to the surrounding community. *See* 1st Goldenson Decl., ECF 1-4, ¶ 32; 1st Novisky Decl, ECF 1-4, ¶ 13 ("staff can easily carry the infection from the community to the

---

[8] Such requests are consistent with class members' rights and class-wide relief, just as, for example, not every class member will wish to pursue every treatment made available for a disease. *See, e.g.*, *Postawko v. Missouri Dep't of Corr.*, No. 2:16-CV-04219-NKL, 2017 WL 3185155, at *14 (W.D. Mo. July 26, 2017), *aff'd,* 910 F.3d 1030 (8th Cir. 2018). This Court has discretion to fashion such mechanisms. *See* Fed. R. Civ. P. 23(d); *e.g.*, *Eubanks v. Billington*, 110 F.3d 87, 94 (D.C. Cir. 1997); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009).

prison and vice versa"). Indeed, the BOP continues to transfer prisoners for reasons far less compelling than saving lives. 2d Novisky Decl. ¶ 10; Robbins Decl. ¶¶ 38-39.

The administrative inconvenience of a life-saving injunction is vastly outweighed by the value of lives saved. It was hardly an abuse of discretion for this Court to hold otherwise. *Cf. Sampson v. Murray*, 415 U.S. 61, 90 (1974) (temporary loss of income generally insufficient); Stay Order, ECF 57, PageID# 747. To the extent that Respondents' refusal to move prisoners to home confinement costs additional resources in needing to transfer them to other prisons instead, its injury is self-inflicted.

Respondents are wrong to argue that that the disease is under control, or that their testing is sufficient. *See* section I.C, *supra*. Further, testing has only come after this Court repeatedly ordered Respondents to answer for its absence. *See* PI Order, ECF 22, PageID# 354 ("paltry" testing); Enforcement Order, ECF 85, PageID# 1124 ("the tests' progress creeps"); Transcript (May 14), ECF 76, PageID# 1011–17 (extensive discussion of testing and requiring daily updates). Respondents cannot claim that their testing is a basis for a stay, Stay Mot. at 14, PageID# 1180, when the Court's orders and oversight are what prompted that testing.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court deny Respondents' Emergency Motion to Stay.

Dated: May 30, 2020

Respectfully submitted,

/s/ David J. Carey
David J. Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue, Ste. 203
Columbus, OH 43206
Phone: (614) 586-1972
Fax: (614) 586-1974
dcarey@acluohio.org

Joseph Mead (0091903)
Freda J. Levenson (0045916)
ACLU of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44102
Phone: (614) 586-1972
Fax: (614) 586-1974
attyjmead@gmail.com
flevenson@acluohio.org

David A. Singleton (0074556)
Mark A. Vander Laan (0013297)
Michael L. Zuckerman (0097194)
Ohio Justice & Policy Center
915 East Ninth Street, Suite 601
Cincinnati, OH 45202
Phone: (513) 421-1108
dsingleton@ohiojpc.org
mvanderlaan@ohiojpc.org
mzuckerman@ohiojpc.org

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2020, the foregoing was filed with the Court's CM/ECF system. Notice of this filing will be sent by operation of that system to all counsel of record.

>  */s/ David J. Carey*  
> David J. Carey