UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| CRAIG WILSON, et al., | : | CASE NO. 4:20-cv-00794 |
| Petitioners, | : | ORDER<br>[Resolving Doc. 98] |
| vs. | : |  |
| MARK WILLIAMS, et al., | : |  |
| Respondents. | : |  |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Respondents, officials at Elkton Federal Correctional Institution, move for a stay pending the outcome of their appeal from the Court's May 19, 2020, Order enforcing the preliminary injunction.[1] Respondents also renew their request for a stay of the Court's April 22, 2020, Order. For the following reasons, the Court DENIES Respondents' motion for a stay.

I. Background

The case's background has been recounted in the Court's previous orders. In summary, Respondents house large numbers of low security inmate in compact dormitories with little or no ability to separate inmates. Respondents' recent testing effort shows that almost twenty percent of tested inmates are COVID-19 positive.[2] Consistent with the federal prison populations everywhere, large inmate percentages are older or have significant medical conditions.[3]

---

[1] Doc. 98.
[2] Doc. 108.
[3] *Care Level Classifications for Medical and Mental Health Conditions or Disabilities*, Federal Bureau of Prisons (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf ("Inmates have a higher prevalence

Case No. 4:20-cv-00794
Gwin, J.

Germane to this order, on April 22, 2020, this Court granted a preliminary injunction. The preliminary injunction ordered Respondents to identify subclass members; evaluate each subclass member's eligibility for transfer within two weeks (by May 6), prioritizing the most medically vulnerable inmates; and transfer vulnerable inmates that Respondents found ineligible for home placement, furlough or compassionate release to another BOP facility.[4]

On April 27, Respondents filed an interlocutory appeal.[5] On April 28, Respondents requested a stay pending appeal.[6]

On April 29, 2020, Respondents moved for the Sixth Circuit to stay this Court's order. On April 30, 2020, the Sixth Circuit denied Respondents' request for an administrative stay.[7] On May 4, 2020 the Sixth Circuit again denied Respondents' request for a stay pending appeal.[8]

This Court subsequently also denied Respondents' motion for a stay.[9]

On May 19, 2020 the Court granted Petitioner's motion to enforce the preliminary injunction and required Respondents to take steps to comply with the preliminary injunction.[10]

On May 20, Respondents petitioned the Supreme Court for a stay of the Court's

---

of chronic medical and mental health conditions than the general population."); *Inmate Age*, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_age.jsp (last visited June 3, 2020).
[4] Doc. 22.
[5] Doc. 26.
[6] Doc. 30.
[7] Doc. 38.
[8] Doc. 46.
[9] Doc. 57.
[10] Doc. 85.

Case No. 4:20-cv-00794
Gwin, J.

May 19 Order.[11]  On May 26, the Supreme Court denied the request.

On May 27, 2020, Respondents filed another appeal with the Sixth Circuit.[12]  This second appeal mostly targeted this Court's May 19, 2020, order.  On May 29, Respondents filed a motion to stay with the Sixth Circuit.[13]  That motion was also denied.[14]

## II. Discussion

### A. April 22 Order

Respondents renew their request to stay the Court's April 22, 2020 Order.  The Court's Order denying Respondents' initial April 22, 2020 Order stay request discussed the impact of the law of the case doctrine in light of the Sixth Circuit's stay denial.  As explained previously, the Sixth Circuit already decided the legal issues this Court must also consider when weighing a motion to stay.  The law of the case doctrine stops this Court from reconsidering issues identical to those already considered, whether the issue was explicitly or implicitly decided.[15]  The Respondents' motion to stay the April 22 Order is therefore denied.

Furthermore, the Court continues to believe that Respondents are not entitled to a stay of the April 22 preliminary injunction Order for the reasons stated in the May 8 Order.

### B. May 19 Order

The Respondents also request a stay of the Court's May 19 Order.  Just as with the Respondents' request to stay the April 22 Order, the Sixth Circuit has already denied a request from Respondents to stay the Order at issue.  Specifically, the Sixth Circuit found

---

[11] Doc. 87.
[12] Doc. 95.
[13] Doc. 99.
[14] Doc. 107.
[15] *Hanover Ins. Co. v. American Engineering Co.,* 105 F.3d 306, 312 (6th Cir. 1997).

-3-

Case No. 4:20-cv-00794
Gwin, J.

that "the respondents have not met the criteria for a stay, given the deference owed to the district court."[16] The law of the case doctrine therefore likely prevents this Court from contradicting the Sixth Circuit's findings as to the individual factors weighed when considering a stay.

In any event, the Court agrees with the Sixth Circuit that Respondents have not met the criteria for a stay. The Court considers four factors when evaluating whether a stay is warranted: (1) the applicant's likelihood of success on the merits; (2) whether the applicant will be irreparably injured without a stay; (3) whether the others will be injured by the stay; and (4) public interest.[17]

**Respondents' Likelihood of Success**: The Court continues to find that Petitioners' claims most similar to habeas claims, that the PLRA does not bar this action, and that Petitioners have shown a likelihood of success on the merits.

**Respondents' Potential Injury**: Respondents argue that they are harmed by what they characterize as this Court's usurpation of the BOP's statutory authority.[18] Surely Respondents do not suggest, however, that BOP's statutory "unreviewable discretion to determine where inmates should be placed" is immune from constitutional challenges such as this one.

In any event, any harm to Respondents in having to exercise their discretionary authority to prevent medical complications and potential death for vulnerable inmates in their charge is slight, especially in light of the Attorney General's instruction to

---

[16] Doc. 107 at 2.
[17] *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009).
[18] Doc. 98-1 at 11.

Case No. 4:20-cv-00794
Gwin, J.

"immediately maximize appropriate transfer to home confinement of all appropriate inmates held at . . . FCI Elkton."[19]

**Petitioners' Potential Injury:** As stated in the Court's previous stay denial Order, Petitioners' potential injuries far outweigh Respondents' potential injuries. As shown by the test results and the recent movement of an Elkton inmate to an outside hospital,[20] Elkton's fight against COVID-19 is far from over and inmates are still at risk.

**Public Interest:** Respondents argue that public safety will be harmed by the placement of certain individuals in home confinement and that transferring prisoners will transmit COVID-19 to new areas.[21] But Elkton's inmates by definition have lower security risks than inmates at other facilities. Additionally, the subclass members that would be transferred are either 65 years old or older and/or suffer from serious health conditions. Recidivism risk falls significantly for inmates in these populations. As reported by the United States Sentencing Commission, during eight years following release, "13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release."[22]

Finally, the Court's April 22 Order requires the quarantining of inmates pre-transfer[23] and BOP has publicly stated that it is doing so separate from that Order for all

---

[19] Attorney General William P. Barr, *Memorandum for Director of Bureau of Prisons, Re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Office of the Attorney General (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

[20] Doc. 101.

[21] Doc. 98-1 at 12-13.

[22] *The Effects of Aging on Recidivism Among Federal Offenders*, United States Sentencing Commission (Dec. 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders#:~:text=Report%20Highlights,at%20the%20time%20of%20release. The Sentencing Commission also reports: "Age exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed." *Id.*

[23] Doc. 22.

-5-

Case No. 4:20-cv-00794
Gwin, J.

pre-home confinement inmates.[24] Respondents also have the ability to mitigate the risk further by extensively testing inmates that are transferred to other facilities and quarantining them when they arrive.

Finally, the Respondent classified the Petitioners as low or minimal security risks. Even at these low security levels, they each cost the public about $37,000 each year to house.[25]

### III. Conclusion

For the foregoing reasons, the Court denies Respondents' Emergency Motion for Stay Pending Appeal.


IT IS SO ORDERED.


Dated: June 4, 2020                           *s/      James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE

---

[24] *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 3, 2020) ("Inmates being released to community custody are quarantined for 14 days prior to release.").

[25] Annual Determination of Average Cost of Incarceration Fee, 84 FR 63891 (Nov. 19, 2019) (In fiscal year 2018, the cost of incarceration fee for Bureau of Prisons inmates was $37,449.00).